2010 OK 56

**STATE of Oklahoma ex rel. OKLAHOMA DEPARTMENT OF PUBLIC SAFETY, Petitioner,**

v.

District Judge Noma GURICH, Respondent,

and

Bobbie Castleberry, Individually and as Widow of Kent Castleberry, Deceased, Real Party in Interest.

No. 107,740.

Supreme Court of Oklahoma.

July 6, 2010.

Kevin McClure, John D. Hadden, Assistant Attorneys General, Oklahoma Attorney General's Office, Oklahoma City, OK, for Petitioner, State of Oklahoma ex rel. Department of Public Safety.

Peter J. Ram, Scott B. Hawkins, Norman & Edem, P.L.L.C., Oklahoma City, OK, for Real Party in Interest, Bobbie Castleberry.

COLBERT, J.

¶ 1 This Court assumed original jurisdiction to resolve important issues of public safety involving injuries to bystanders in police pursuits. The *publici juris* nature of those issues combined with the pressing need to resolve this matter and another matter which is pending on certiorari review[1] is sufficient to invoke this Court's discretionary review. *See Edmondson v. Pearce*, 2004 OK 23, ¶ 11, 91 P.3d 605, 613. Today's opinion explains governmental immunity in the context of police pursuits, analyzes causation when a bystander is injured in a police pursuit, and identifies the applicable standard of care required by the drivers of emergency vehicles involved in such pursuits. This matter demonstrates the current confusion concerning bystander claims brought against the State and its political subdivisions arising from police pursuits. However, the State has not demonstrated any action by the trial court that would entitle it to extraordinary relief. That request is therefore denied.

FACTS AND PROCEDURAL HISTORY

¶ 2 On November 9, 2005, Kent Castleberry was a passenger in a car driven by a family friend. He was killed when the friend's car was struck by a car traveling at a high rate of speed which was being pursued by an Oklahoma Highway Patrol (OHP) trooper.

¶ 3 Just prior to the pursuit, the OHP identified a stolen, green, 2005, Ford Expedition (SUV) which was parked outside an apartment complex. Troopers watched a woman drive the SUV away from the complex and they began to follow her. They

---

1. Some of the same issues are pending in *Gregory Ray, Debora Ray, and E.R., a minor, v. Broken Arrow Police Department; A. Mauch, City of Bro-* *ken Arrow*, No. 106,051 (certiorari granted January 19, 2010). This decision will resolve most of the issues presented by that matter.

observed a smaller white car that appeared to be following the SUV and radioed trooper Nelson to ask him to stop the white car and conduct a field interview of the driver.

¶ 4 Trooper Nelson followed the white car until it began driving recklessly. He activated his lights and siren and pursued the fleeing driver for several miles at high rates of speed in moderate to heavy traffic through mixed residential and business areas of Oklahoma City. The pursuit ended when the white car struck the car in which decedent was a passenger with such force that it rolled. The driver of the fleeing vehicle attempted to flee on foot. He was apprehended and arrested. Eventually, he pleaded guilty to a charge of first degree manslaughter. The driver of the SUV, who was never involved in the pursuit, was pulled over and arrested without incident several miles away from the scene of the collision.

¶ 5 Decedent's widow brought the underlying action in District Court pursuant to the Governmental Tort Claims Act (GTCA), Okla. Stat. tit. 51, §§ 151–200 (2001 & Supp. 2009). The State moved for summary judgment arguing that it and its political subdivisions are exempted from liability by certain provisions of the GTCA, that the police pursuit was not a cause of the bystander's death as a matter of law, and in the alternative, the trooper's pursuit did not as a matter of law rise to the level of reckless disregard for the safety of others so as to impose liability on his employer. The trial court denied the motion thus precipitating this original action and today's pronouncement concerning the legal issues presented.

## STANDARD OF REVIEW

¶ 6 The applicability of a GTCA immunity provision presents an issue of law. *See Salazar v. City of Oklahoma City*, 1999 OK 20, ¶¶ 24–35, 976 P.2d 1056, 1065–68. The existence of a duty also presents a question of law. *Delbrel v. Doenges Bros. Ford, Inc.*, 1996 OK 36, ¶ 7, 913 P.2d 1318, 1320. Issues of law are reviewed *de novo*. *See Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084.

## POLICE PURSUITS AND THE GOVERNMENTAL TORT CLAIMS ACT

¶ 7 The State argues that it enjoys absolute immunity for the actions of its officers while engaged in police pursuits under several exemptions to liability enumerated in section 155 of the GTCA. Precedent, however, holds to the contrary.

¶ 8 Exemption 4 of section 155 retains the immunity of the State or a political subdivision for a claim resulting from the "[a]doption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy." Similarly, exemption 5 extends immunity to the "[p]erformance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees." Finally, exemption 6 exempts from liability "[c]ivil disobedience, riot, insurrection or rebellion, or the failure to provide, or the method of providing, police, law enforcement or fire protection."

¶ 9 The State argues that these exemptions collectively or individually prohibit any "claims against law agencies when a fleeing suspect injures an innocent bystander." Under the State's view, any "discretionary decision" made by a law enforcement agency or its employee in order to provide police protection is not subject to an action in tort. The State reads the exemptions much too broadly.

¶ 10 This Court has recognized that "[a]lmost all acts of government employees involve some element of choice and judgment." *Nguyen v. State*, 1990 OK 21, ¶ 4, 788 P.2d 962, 964. Therefore, "the government retains its immunity with respect to formulation of policy, but is subject to liability for routine decisions and daily implementation of the policy or planning level decisions." *Id.*, ¶ 5, 788 P.2d at 965. "Statutory immunity for *providing protective services* (police or fire) is not co-extensive with a blanket immunity from common-law negligence for *carrying out law enforcement duties*." *Salazar*, 1999 OK 20, ¶ 27, 976 P.2d

**4**

at 1066. Negligent performance of a law enforcement function is not shielded from immunity under the GTCA. *Id.*

¶11 Exemptions 4, 5, and 6, when read together with this Court's explanations, define clearly the scope of statutory immunity concerning law enforcement. The State and its political subdivisions enjoy immunity for the choice to adopt or enforce a law, the formulation of law enforcement policy, and the method by which policy is implemented. The exemptions do not apply to tortious acts of government servants in the daily implementation of policy. The blanket immunity the State seeks concerning police pursuits does not exist in Oklahoma's statutory law or jurisprudence.[2]

## CAUSATION

¶12 The State contends that the trooper's pursuit did not cause the fatal collision between the fleeing vehicle and the vehicle in which the decedent was a passenger. It argues that legal causation can be found only if the emergency vehicle made direct contact with the bystander vehicle or with the fleeing vehicle causing it to alter its course. The State asserts that such a rule of causation has been codified in the exemption of liability found at section 155(18) of the GTCA. Exemption 18 provides immunity when a claim results from "[a]n act or omission of an independent contractor or consultant or his or her employees, agents, subcontractors or suppliers of a person other than an employee of the state or political subdivision at the time the act or omission occurred." The State reasons that because the fleeing driver was "other than an employee of the state or political subdivision" the GTCA exempts the actions of the pursuing officer from tort claims.

¶13 The State's understanding of exemption 18 is simply incorrect. The provision does not speak to causation, it states that the State or its political subdivisions are exempt from liability only for the acts of government employees and not the acts of other enumerated persons, including independent contrac-

tors and their employees. The rules of causation that apply to this matter are found in this Court's precedent.

¶14 "An essential element of the plaintiff's cause of action for negligence, or for that matter for any other tort, is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered." W. Page Keeton et al., Prosser and Keeton on Torts 263 (5th ed. 1984). This reasonable connection is one of "proximate cause" or "direct cause" as that term is used in the following jury instruction:

> Direct cause means a cause which, in a natural and continuous sequence, produces injury and without which the injury would not have happened. For negligence to be a direct cause it is necessary that some injury to [the property of] a person in [Plaintiff's] situation must have been a reasonably foreseeable result of negligence.

Oklahoma Uniform Jury Instructions (OUJI)(Civil) No. 9.6. "[T]he question of *proximate cause* is generally one of fact for the jury. It becomes one of law *only* when there is *no evidence* from which a jury could reasonably find a causal nexus between the act and the injury." *Jackson v. Jones*, 1995 OK 131, ¶8, 907 P.2d 1067, 1072–73 (footnotes omitted).

¶15 "There may be more than one direct cause of an injury. When an injury is the result of the combined negligence of two or more persons, the conduct of each person is a direct cause of the injury regardless of the extent to which each contributes to the injury." OUJI (Civil) No. 9.7. "For example, when a cause *merely combines* with another act to produce injury, or *several events coincide* to bring about a single injurious result, each negligent actor may be held accountable." *Jackson*, 1995 OK 131, ¶9, 907 P.2d at 1073. The chain of causation may be broken by an intervening event, also known as a superseding or supervening cause. *Id.* However, to actually sever the chain of causation the event must be (1) independent of

---

2. The fact that police pursuits do not fall within the exemptions from liability stated in the GTCA in no way diminishes the effect of section 154 which limits the extent of government liability for claims brought pursuant to the Act. *See* Okla. Stat. tit 51, § 154.

the original negligent act, (2) adequate in itself to produce the injury, and (3) reasonably unforeseeable. *Thompson v. Presbyterian Hosp., Inc.,* 1982 OK 87, ¶ 15, 652 P.2d 260, 264; OUJI (Civil) No. 9.8. The issue of whether the consequences of the original act could have been reasonably foreseen is one of fact. *Jackson,* 1995 OK 131, ¶ 9, 907 P.2d at 1073.

¶ 16 The dissenting opinion acknowledges that the statutory privilege of the driver of an emergency vehicle to disregard certain traffic laws under certain conditions is subject to the duty to refrain from doing so in a manner that demonstrates "reckless disregard for the safety of others." The dissent would hold, however, that "a driver who maintains control of the emergency vehicle and does not harm anyone with the vehicle, remains within the privilege, breaches no duty, and commits no tort as a matter of law." That conclusion fails to give effect to the common law rules of causation discussed in this opinion; namely that there may be more than one direct cause of an injury and that several events may coincide to cause injury. Thus, the view expressed in the dissenting opinion would create an exception to direct causation and concurrent causation for an officer's decision to initiate and continue a pursuit no matter how reckless the decision or how recklessly the officer drives so long as the emergency vehicle remains in the driver's control. As explained below, the privilege to disregard certain traffic laws does not extend to reckless behavior which injures others.

¶ 17 In this matter, this Court cannot say that there was *no* evidence from which a jury could find a causal nexus between the trooper's decision to pursue and remain in pursuit of the fleeing driver. The relevant facts are in dispute and the trier of fact must determine whether the collision which took decedent's life was a foreseeable consequence of the trooper's actions. Those actions must be measured under the applicable standard of care owed by the operator of an emergency vehicle involved in a police pursuit.

## DUTY OF CARE

¶ 18 This Court has not addressed the duty of care owed to a bystander who is injured by a police pursuit. In fact, the last publish-ed appellate opinion addressing the issue was the Court of Civil Appeals' decision in 1990 of *Kelly v. City of Tulsa,* 1990 OK CIV APP 30, 791 P.2d 826 (no pet. for cert.). For the reasons set forth, this Court determines that *Kelly* does not accurately state the applicable standard of care and it is therefore disapproved. This opinion articulates that standard and addresses the legal issues that surround its application.

¶ 19 In *Kelly,* the Court of Civil Appeals relied on a Kansas Supreme Court decision in order to draw a distinction between the "operation of an emergency vehicle itself" and the "decision to initiate and continue police pursuit." *Id.,* ¶¶ 11–12, 791 P.2d at 828. It held that the duty of care provided by Oklahoma's emergency vehicle statutes apply only to the former. *Id.,* ¶ 12, 791 P.2d at 828 (citing Okla. Stat. tit. 47 §§ 11–106 & 11–405). It then declared that the standard that applied to the decision to pursue or continue to pursue was whether the pursuit was conducted in a manner "so extreme or outrageous as to pose a higher threat to public safety than ordinarily incident to high-speed police pursuits." *Id.,* ¶ 14, 791 P.2d at 829. It further held that, as a matter of law, "the benefit of apprehending [fleeing law violators] outweighs the ordinary risks inherently involved in such pursuit." *Id.* Thus, Oklahoma became one of only four jurisdictions in which a distinction was recognized between the physical operation of an emergency vehicle and the decision to pursue or continue the pursuit of a fleeing driver. *See Thornton v. Shore,* 233 Kan. 737, 666 P.2d 655 (1983); *Robinson v. City of Detroit,* 462 Mich. 439, 613 N.W.2d 307 (2000); *Estate of Cavanaugh v. Andrade,* 202 Wis.2d 290, 550 N.W.2d 103 (1996). In 2007, the Kansas Supreme Court revisited the distinction and overruled it in *Robbins v. City of Wichita,* 285 Kan. 455, 172 P.3d 1187 (2007).

¶ 20 The *Robbins* court noted that the weight of authority is presently against making an arbitrary distinction between the duty of care owed while operating an emergency vehicle and a duty of care owed while pursuing a fleeing driver. *Id.* at 1193. Like the Kansas Supreme Court, this Court recognizes that "the act of driving involves both the mental and physical components" and that a decision to begin or discontinue a

police pursuit is indistinguishable from the method of pursuing. *Id.* at 1195. This Court holds that the standard of care which the operator of an emergency vehicle owes to the public is found in the provisions of title 47 of the Oklahoma Statutes concerning emergency vehicles.

¶ 21 In 1961, the Oklahoma Legislature adopted certain "Rules of the Road" as part of the Model Uniform Vehicle Code. *See* 1961 Okla. Sess. Laws 373 (current version codified at Okla. Stat. tit. 47, §§ 11–101 through 11–1405 (2001 & Supp.2009)). Most states patterned their provisions concerning emergency vehicles after the Model Uniform Vehicle Code although "jurisdictions vary considerably as to their degree of conformity with the uniform code." 10 Am.Jur. Proof of Facts 3d 203, 213 (1990).

¶ 22 Section 11–106 of title 47 grants certain exemptions from the Rules of the Road to the driver of an authorized emergency vehicle[3] when responding to an emergency call or fire alarm. Such a driver may:

1. Park, or stand, irrespective of the provisions of this chapter;

2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

3. Exceed the maximum speed limits so long as speeding does not endanger life or property;

4. Disregard regulations governing direction of movement; and

5. Disregard regulations governing turning in specified directions.

Okla. Stat. tit. 47, § 11–106(B). These exemptions "apply only when the driver is properly and lawfully making use of an audible signal or of flashing red or blue lights or a combination of flashing red and blue lights." *Id.* at § 11–106(C). However, exemptions 3 (speed) and 5 (turning) are granted to a law enforcement officer operating an emergency vehicle without the use of audible and visual signals if the officer is following a suspect and has probable cause to believe that:

1. Knowledge of the presence of the officer will cause the suspect to:

a. destroy or lose evidence of a suspected felony,

b. end a suspected continuing felony before the officer has obtained sufficient evidence to establish grounds for arrest, or

c. evade apprehension or identification of the suspect or the vehicle of the suspect; or

2. Because of traffic conditions, vehicles moving in response to the audible or visual signals may increase the potential for a collision.

The exceptions granted in this subsection shall not apply to an officer who is in actual pursuit of a person who is eluding or attempting to elude the officer in violation of Section 540A of Title 21 of the Oklahoma Statutes.

*Id.* at § 11–106(D). In any event, "[t]he provisions of this section shall not relieve the

---

3. Emergency vehicles are:

A. When equipped as prescribed in subsection B of this section:
1. Vehicles of fire departments;
2. Ambulances or vehicles specified pursuant to subsection B of Section 1–2512 of Title 63 of the Oklahoma Statutes of licensed ambulance service providers;
3. State vehicles of law enforcement agencies;
4. County vehicles of sheriffs and full-time commissioned deputies and vehicles designated by the sheriff for support of the sheriff's office including privately owned vehicles driven by the sheriff and full-time, part-time and reserve commissioned deputies; provided the audible sirens and flashing red lights equipped on such privately owned vehicles are used only in a law enforcement capacity and in the course of duty;
5. Municipal vehicles of police departments;
6. Vehicles owned and operated by the United States Marshals Service or the Federal Bureau of Investigation;
7. Vehicles of Oklahoma National Guard units designated by the Adjutant General for support to civil authorities; or
8. Vehicles owned and operated by any local organization for emergency management as defined by Section 683.3 of Title 63 of the Oklahoma Statutes, are authorized emergency vehicles.
B. All vehicles prescribed in subsection A of this section shall be equipped with sirens capable of giving audible signals as required by the provisions of Section 12–218 of this title and flashing red lights as authorized by the provisions of Section 12–218 of this title.
Okla. Stat. tit. 47, § 1–103.

driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of reckless disregard for the safety of others." *Id.* at § 11–106(E).

¶ 23 Although the text of section 11–106(E) was taken directly from the Model Uniform Vehicle Code and is shared in some form by most states it "has created much confusion and varying results in the courts. In fact, practically every state has said something different about the [provision]." Patrick T. O'Connor & William L. Norse, *Police Pursuits: A Comprehensive Look at the Broad Spectrum of Police Pursuit Liability and Law,* 57 Mercer L. Rev. 511, 516 (2006). Some states have read "due regard for the safety of others" to impose a negligence standard and apparently regard the "reckless disregard" clause to be surplusage. *See, e.g., Stenberg v. Neel,* 188 Mont. 333, 613 P.2d 1007, 1010 (1980). *See also Robbins,* 172 P.3d at 1195–96 (citing cases applying an ordinary negligence standard). Many other states have held that their version of the provision imposes a standard of recklessness or willful and wanton conduct.[4] *See Robbins,* 172 P.3d at 1196–97.[5]

¶ 24 This Court's search for legislative history indicating the intent of the provision has been fruitless. However, several important policy considerations have been identified by courts which apply a standard higher than mere negligence. They per-suade this Court to adopt "reckless disregard for the safety of others" as the duty of care an emergency vehicle driver owes to the public while operating pursuant to section 11–106.

¶ 25 First, the "reckless disregard" clause of section 11–106(E) cannot be considered surplusage. "The Legislature is not presumed to have done a vain or useless act in the promulgation of a statute." *Comer v. Preferred Risk Mut. Ins. Co.,* 1999 OK 86, ¶ 18, 991 P.2d 1006, 1014 (footnote omitted). "Statutes must be read to render every part operative and to avoid rendering it superfluous or useless." *Id.,* ¶ 19 n. 35, 991 P.2d at 1014 n. 35 (citation omitted). The text of section 11–106(E) establishes "reckless disregard" as "the standard of care for evaluating whether the driver of an emergency vehicle breached the duty to 'drive with due regard for the safety of all persons.'" *Robbins,* 172 P.3d at 1197.

¶ 26 Second, public policy demands a standard higher than mere negligence for situations involving emergency vehicles. That is particularly true for the split-second life and death decisions involved in police pursuits. A police pursuit is "one of the most volatile, dangerous, and unpredictable tasks of police work." Andrew G. Cooley & Brock Gavery, *Police Pursuit and High–Speed Driving Lawsuits,* The Police Chief, Oct. 2006 at 26, 28. As such, liability should be reserved only for those who recklessly disregard the risks to the public created by the decision to commence or continue a police pursuit.

---

4. As Professor Prosser noted:
   [t]he words "willful," "wanton," or "reckless," are customarily applied; and sometimes, in a single sentence, all three. Although efforts have been made to distinguish them, in practice such distinctions have consistently been ignored, and the three terms have been treated as meaning the same thing, or at least as coming out at the same legal exit. They have been grouped together as an aggravated form of negligence, differing in quality rather than in degree from ordinary lack of care.
   Prosser, *supra* at 212. Oklahoma's Uniform Jury Instructions define both "willful and wanton" conduct and "reckless disregard of another's rights" to be conduct that is "unreasonable under the circumstances, and also there must have been a high probability that the conduct would cause serious harm to another person." OUJI (Civil) Nos. 5.6 & 9.17. Because such conduct differs in kind from conduct constituting ordi-nary negligence, a "jury must be instructed that while ordinary negligence of the plaintiff may be used as a defense against [negligence or] gross negligence, it may not be considered as a defense against any form of conduct found to be willful and wanton or intentional." *Graham v. Keuchel,* 1993 OK 6, ¶ 52, 847 P.2d 342, 363 (emphasis omitted).

5. To establish a Fourteenth Amendment substantive due process claim in federal courts, the pursuing officer's actions must demonstrate more than deliberate or reckless conduct, "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Sacramento v. Lewis,* 523 U.S. 833, 836, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

¶ 27 Third, any decision to pursue or continue a pursuit involves striking a balance between law enforcement effectiveness and the risk of injury to the public. That balancing is reflected in the pursuit policy of the OHP which acknowledges that "[t]he decision to terminate a pursuit may be the most rational means of preserving the lives and property of . . . the public" and that a "[p]ursuit shall be immediately terminated [when] the danger posed by continued pursuit to the public . . . is greater than the value of apprehending the suspect(s)." A standard of "reckless disregard" is more consistent with the balancing of benefit and risk required by a typical police policy than is a standard of mere negligence.[6] As the Kansas Supreme Court observed, "the duty of protecting the public is coextensive with the duty of apprehending suspected criminals." *Robbins*, 172 P.3d at 1199.

## CONCLUSION

¶ 28 Today, this Court gives effect to the Oklahoma Legislature's choice of reckless disregard as the standard of care required of the operator of an emergency vehicle. The exemptions from liability found in the GTCA do not apply to a law enforcement officer's decision to pursue or maintain pursuit of a fleeing driver. Whether an officer's conduct meets the standard of care and whether the officer's actions were the cause of a bystander's injury are questions to be determined in a manner consistent with this pronouncement.

ORIGINAL JURISDICTION PREVIOUSLY GRANTED; EXTRAORDINARY RELIEF DENIED.

CONCUR: EDMONDSON, C.J.; OPALA, KAUGER, WATT, WINCHESTER, COLBERT, JJ.

DISSENT: TAYLOR, V.C.J.; HARGRAVE, REIF, JJ.

---

6. As one commentator has noted:

There are two widely adopted styles of pursuit policy. A restrictive policy limits the crimes for which a pursuit may be initiated. Common restrictive policies may limit pursuits to those cases where there is a violent felony. In contrast, a discretionary policy gives the officer basic guidance about when to initiate, and

REIF, J., with whom TAYLOR, V.C.J. and HARGRAVE, J., join, dissenting.

¶ 1 The majority opinion holds that law enforcement officers and their government entity employers can be liable to third parties for harm caused by drivers who are fleeing apprehension by the officers. The majority finds support for such liability in the statute governing the operation of emergency vehicles when in pursuit of an actual or suspected violator—47 O.S. Supp.2004 § 11–106. The majority points out that the statute expressly provides that its "provisions [do not] protect the driver of an emergency vehicle from the consequences of reckless disregard for the safety of others." The majority concludes that this language applies not only to the officer's operation of his vehicle, but also to the officer's decisions to commence and to continue pursuit. I respectfully dissent from this interpretation because the text of section 11–106 as a whole indicates that the "reckless disregard" language relates to the driving or operation of an emergency vehicle.

¶ 2 It should be first noted that subsection (A) of section 11–106 extends a "privilege" to the driver an emergency vehicle to operate the vehicle in ways that would otherwise violate certain traffic laws and constitute negligence per se. A privilege is a rule that relieves an actor from liability for conduct which, under ordinary circumstances, would subject the actor to liability. Restatement (Second) of Torts § 10(1) (1965). A privilege may be based upon the fact that its exercise is necessary for the protection of some interest of the public which is of such importance as to justify the harm caused or threatened by its exercise. *Id.* at § 10(2)(b). If the acts are done for the purpose of protecting or advancing the interest, the privilege protects the actor from liability. *Id.* at cmt. d.

discretion about how to conduct and terminate a pursuit.

Cooley, *Police Pursuit, supra* at 29 (footnote omitted). In either style the balancing of risk versus benefit occurs, the difference is whether the officer's employer makes the determination in advance or guides the officer's discretion.

¶ 3 Under subsection (A) of section 11–106, the driver of an authorized emergency vehicle may exercise the privilege set forth therein "[1] when responding to an emergency call or [2] when in the pursuit of an actual or suspected violator of the law or [3] when responding to ... a fire alarm." These are public interests protected by the privilege. Clearly, *the decision* that the driver of an emergency vehicle should act for the purpose of protecting or advancing these public interests has been made by the Legislature.

¶ 4 To balance the protection of these specific interests, with a more general interest of public safety, the Legislature made exercise of the emergency vehicle privilege subject to certain conditions. These conditions deal with the operation of the emergency vehicle. In subsection (B)(2), the Legislature authorizes the driver of an emergency vehicle to "[p]roceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for *safe operation*." (Emphasis added.) Subsection (C) generally requires the driver of an emergency vehicle *to make use* of an audible signal or flashing red or blue lights or combination thereof. Subsection (E) further provides "[t]he provisions of this section shall not relieve the driver of an authorized emergency vehicle from the duty *to drive* with due regard for the safety of all persons." (Emphasis added.)

¶ 5 The language that the provisions of section 11–106 shall not protect the driver "from the consequences of reckless disregard for the safety of others," is simply another condition on the exercise of the privilege. That is, a driver of an emergency vehicle who acts (drives) with reckless disregard loses the protection of the privilege. Conversely, a driver who maintains control of the emergency vehicle and does not harm anyone with the vehicle, remains within the privilege, breaches no duty, and commits no tort as a matter of law.

¶ 6 The view in this dissent that liability arising under section 11–106 arises only from the operation of the emergency vehicle was first expressed by the Court of Civil Appeals in the case of *Kelly v. City of Tulsa*, 1990 OK CIV APP 30, 791 P.2d 826. In *Kelly*, the Court of Civil Appeals rejected the plaintiff's contention that liability could be imposed under section 11–106 for an officer's decision to initiate and continue a pursuit. The Court of Civil Appeals correctly observed that the decision to pursue is not the consideration addressed by section 11–106.

¶ 7 In the case of *Taylor v. City of Oklahoma City*, 1995 OK CIV APP 133, 914 P.2d 1073, the Court of Civil Appeals would again consider the scope of section 11–106. The Court of Civil Appeals followed *Kelly* and concluded the duty of care created by the emergency vehicle statutes applies only to the operation of the emergency vehicle itself and cannot be the basis for governmental liability absent evidence that the emergency vehicle itself was being driven in an unsafe manner.

¶ 8 While *Kelly* and *Taylor* are not binding precedent, they are published opinions by an appellate court of this State that construe a statute of significant public concern. Since *Kelly* and *Taylor* were decided, the Legislature has amended section 11–106 four times, the most recent amendment occurring in 2004. If the Legislature had disapproved of the interpretation of section 11–106 in *Kelly* and *Taylor*, it would surely have expanded the privilege and its conditions to include the decision to initiate and continue a pursuit. By not doing so, the Legislature has tacitly approved of the interpretation in *Kelly* and *Taylor*.

¶ 9 As concerns the issue of "concurrent causes," a law enforcement officer who initiates a pursuit of a violator does an act that public policy encourages and protects. The initiation of pursuit simply cannot be a legal wrong that can operate concurrently with the wrong of the violator. In addition, once a pursuit is commenced, section 11–106 governs the action of the pursuing officer. The initiation of a pursuit and its continuation in compliance with section 11–106 creates nothing more than a condition for harm *caused* by the violator being pursued.

¶ 10 In summary, the Legislature created the emergency vehicle privilege in section 11–106, provided the conditions for its exercise and specified the conditions under which the driver of an emergency vehicle would

incur liability. The current text of section 11–106, as well as Oklahoma appellate court interpretations of section 11–106, indicate that the privilege and any liability thereunder extend to the driving or operation of an emergency vehicle, and not the decision to pursue a violator or to respond to emergency calls. In setting public policy, the Legislature has decided that the public benefit to be achieved by pursuit of violators outweighs any potential harm caused by the violators being pursued, who are under a duty to stop pursuant to 47 O.S.2001 §§ 11–103 and 11–405, and if they attempt to allude, commit a crime under 21 O.S.2001 § 540A. Additionally, section 540A(C) addresses the issue of accidents caused by violators who attempt to allude pursuit by law enforcement; in cases where such accidents result in great bodily injury, the Legislature has provided a felony penalty for the violator being pursued. If the Legislature has believed victims of such accidents should have some remedy from the pursuing law enforcement agency, it could have also provided such a remedy in section 540A(C) but did not do so. In my opinion, any change in the status quo of the laws governing the emergency vehicle privilege of section 11–106 should be made by the Legislature and not by this Court.

¶ 11 I respectfully dissent.