Question Submitted by: The Honorable Wade Roussellot, State Representative, District 12
2014 OK AG 5
Decided: 04/11/2014
Oklahoma Attorney General Opinions
Cite as: 2014 OK AG 5, __ __

Â¶0 This office has received your request for an official Attorney General 
Opinion in which you ask, in effect, the following questions:
1. Is a 
board of county commissioners under a legal duty to supply fire protection 
coverage to unincorporated areas of the county that are not currently receiving 
fire protection services? 2. Is a board of county commissioners financially 
liable for not supplying fire protection coverage to unincorporated areas of the 
county that are not currently receiving fire protection services?
I.
Boards of County Commissioners Possess Discretionary Legal Authority to 
Provide Fire Protection Services in the County. 
Â¶1 A board of county commissioners derives its power and authority from 
statutes, and acts performed by the board must be done pursuant to statutory 
authority. Tulsa Exposition & Fair Corp. v. Bd. of County Comm'rs, 
468 P.2d 501, 508 (Okla. 1970). Powers 
conferred upon a board of county commissioners must be exercised in the manner 
provided by law. Id. Unambiguous statutes granting this authority are 
accorded the effect of the plain ordinary meaning of the words used. State ex 
rel. Okla. Firefighters Pension & Ret. Sys. v. City of Spencer, 
237 P.3d 125, 132 (Okla. 2009). 
Â¶2 Boards of county commissioners are expressly and unambiguously authorized 
by statute to provide fire protection services in each county:
A The board of county commissioners of each county of this state is 
hereby authorized to provide firefighting service in the county and for 
such purpose to use county funds to rent, lease or purchase firefighting 
equipment and to rent or construct and equip and operate fire stations and to 
employ necessary personnel to provide such service. The board of county 
commissioners shall also have the authority to determine and collect charges for 
firefighting services performed by the county from any person to whom such 
services are provided.
19 O.S.2011, Â§ 351(A) (emphasis added).[1] It should first be 
observed that by its terms, Section 351(A) does not confine the authority of a 
board of county commissioners to provide fire protection services to only those 
areas within unincorporated areas of the county, but instead authorizes the 
provision of such services "in the county." Accordingly, a board of county 
commissioners may provide such services anywhere in the county including 
incorporated areas. 
Â¶3 It is also notable that the foregoing provision is stated in a manner that 
is permissive, not mandatory. Unambiguous statutes are to be understood 
according to the plain ordinary meaning of the words used in the statute. 
Hubbard v. Kaiser-Francis Oil Co., 256 P.3d 69, 72 (Okla. 2011). Section 351(A) states 
that boards of county commissioners are "authorized" to provide fire protection 
services in the county. To "authorize" means:
1. To grant authority or power to. 2. To approve or give permission for 
sanction: authorize a highway project. 3. To be sufficient grounds for; 
justify.
American Heritage Dictionary 142 (2nd Coll. ed.) . In construing the word 
"authorized" within other statutes, courts have understood it to confer 
discretionary authority or permission: "The term 'authorized' . . . does not 
mean 'mandatorily directed' . . . . It is synonymous with the word empowered . . 
. ." Morgan v. Wilson, 450 P.2d 902, 903-04 (Okla. 1969) (citation omitted) 
(holding that the Legislature's use of "authorized" in 11 O.S.Supp.1963, Â§ 541a 
provided a municipality legal authority to set up a pension and retirement plan 
"if it is so inclined," id., but not a legal duty to do so). See also 
Kroth v. City of Okla. City, 990 P.2d 906, 908-09 (Okla. Civ. App. 1999) (construing 
the use of "authorized" under 85 O.S.Supp.1998, Â§ 3(6) to not mean 
"mandatorily directed," but to mean "empowered," such that a police officer 
agreeing to accept a citizen's offer of aid in taking a suspect into custody 
transformed the citizen into a "voluntary worker" for the city under the Workers 
Compensation Act such that injuries to the citizen incurring in the course of 
such assistance were compensable); Hullum v. R. J. Edwards, Inc., 
103 P.2d 527, 529 (Okla. 1940) 
(holding that the use of "authorized" in 62 O.S.Supp.1933, Â§ 431, did not mean a town was 
"mandatorily directed" to provide for a special tax levy for the payment of 
matured bonds that could not be paid from an underfunded sinking fund, as 
opposed to undertaking other funding options such as voluntarily paying the 
bonds from other available monies or permitting a judgment be entered thereon 
and enforced). Since the authority conferred on a board of county commissioners 
under 19 O.S.2011, Â§ 
351(A) is permissive rather than mandatory in nature, a board 
of county commissioners possesses lawful discretion to either provide or not 
provide fire protection services "in the county." Compare Morgan, 450 
P.2d at 903-04 (holding the use of the term "authorized" does not mandate a 
legal duty), with 19 O.S.2011, Â§ 351(A) (using the term 
"authorized"). Consequently a board of county commissioners is not mandated by 
law to provide fire protection services in the county.
Â¶4 That a board of county commissioners is authorized but not required under 
Section 351(A) to provide fire protection services throughout the county is also 
seen in subsection D of Section 351. That section authorizes a board of county 
commissioners under certain defined circumstances to organize a county fire 
department serving certain specific territory according to defined borders[2] as a separate entity that 
is not supervised by the board of county commissioners, but is supervised by a 
separate board of directors. 19 O.S.2011, Â§ 351(D).[3] 
Â¶5 While the county may provide fire protection services through a county 
fire department anywhere "in the county," implicit within Section 351(A)'s 
permissive grant of authority to provide such services is a legislative 
recognition that a board of county commissioners need not duplicate fire 
protection services provided by other legal entities within the county. In this 
regard, all municipalities located "in the county" are also authorized to 
provide fire protection services both within and outside of their incorporated 
areas. 11 O.S.2011, Â§ 
29-105(1), (2), (6). Other statutes authorize the organization and operation of 
charitable corporations to provide fire protection services within 
unincorporated areas of a county. See 18 O.S.2011, Â§Â§ 592 - 594. Additionally, 
where organized, a fire protection district is a separate political subdivision. 
19 O.S.2011, Â§ 901.7(B). Fire protection 
districts are distinct from county fire departments[4] and are organized to 
provide fire protection services within the defined territory of the fire 
protection district. 19 O.S.2011, Â§ 901.2. Fire protection 
districts may contract on a fiscal year basis with municipalities to provide 
fire protection services for the municipality, id. Â§ 901.25(A), and may 
contract with others to supply fire protection services to persons and property 
located outside of the boundaries of the fire protection district. Id. 
Â§ 901.25(B). 
Â¶6 In addition to its general authority to provide fire protection services 
through a county fire department as provided by 19 O.S.2011, Â§ 351(A), boards of county 
commissioners also have specific legal authority to contract with municipalities 
to provide fire protection services to persons and property not located within 
the corporate limits of a municipality, and to pay for such services from 
available monies in the county's general fund[5] or the county highway fund. 19 O.S.2011, Â§ 351.1.[6] A board of county 
commissioners may also enter into reciprocal agreements with other counties to 
provide fire protection services within the others' respective territories. 
Id. Similarly, a board of county commissioners may contract with a fire 
protection corporation or a fire protection district[7] to provide fire 
protection services within unincorporated areas of the county and pay for such 
services from available funds in the county general fund or county highway fund. 
19 O.S.2011, Â§ 351.3. However, the legal 
authority of a municipality, a charitable corporation or a fire protection 
district to provide fire protection services to persons or property located 
outside of the entity's regular service boundaries is not dependent upon any 
agreement with the board of county commissioners.
Â¶7 In summary, the Legislature has granted discretionary legal 
authority to boards of county commissioners to directly organize county fire 
departments for the purpose of providing fire protection services either "in the 
county," see 19 O.S.2011, Â§ 351(A), or within certain 
defined areas. See id. Â§ 351(D). The Legislature has also conferred 
discretionary legal authority on boards of county commissioners to 
provide fire protection services in unincorporated areas of the county through 
contracts for such services with municipalities, see id. Â§ 351.1, with 
corporations organized to provide fire protection services, see id. Â§ 
351.3, and with existing fires protection districts. Id. Though it has 
discretionary authority to provide fire protection services in the county, a 
board of county commissioners is not under an affirmative legal duty to provide 
such services, and may defer the provision of such services to other legal 
entities providing fire protection services in the county. Accordingly, as the 
legal authority conferred on boards of county commissioners is permissive rather 
than mandatory, a board of county commissioners has discretion to determine as a 
matter of policy whether, when, how, and where within the county to provide fire 
protection services.

II.
A Board of County Commissioners is Immune From Liability for the Exercise of 
its Discretion not to Provide Fire Protection Services.
Â¶8 As shown above, a board of county commissioners has discretionary 
authority to provide, or not provide, fire protection services in part or the 
whole of the county. Your second question involves the financial liability that 
accrues from exercising that discretion.
Â¶9 By enacting the Governmental Tort Claims Act ("Tort Claims Act"), 
see 51 O.S.2011 & 
Supp.2013, Â§Â§ 151 - 172, the Legislature statutorily established the 
doctrine of sovereign immunity in Oklahoma in favor of the State and its 
political subdivisions, together with its officers and employees acting within 
the scope of their official duties, making them immune from liability for torts 
committed by them. 51 O.S.2011, Â§ 152.1(A). Counties are included 
within the meaning of "political subdivisions" in the Tort Claims Act. 
Id. Â§ 152(11)(c). 
Â¶10 In the same legislation, the Legislature waived the liability protection 
of sovereign immunity for such torts for the State and its political 
subdivisions only, (id. Â§Â§ 152.1(B); 153) except for certain specific 
exemptions from that waiver. 51 O.S.Supp.2013, Â§ 155.[8] As observed by the 
Oklahoma Supreme Court:
The general waiver [of sovereign immunity] is not an infinite blue sky. The 
scope of liability is limited in Â§ 153 of the Act to torts committed within the 
scope of employment where private persons or entities would be liable under the 
laws of this state and is subject to other limitations and exceptions specified 
in the Act. Thirty carefully enumerated exemptions from liability are provided 
in 51 O.S.Supp.1989, Â§ 
155.
Nguyen v. State, 788 P.2d 962, 964 (Okla. 1990).[9] Section 155 provides in 
relevant part:
The state or a political subdivision shall not be liable if a loss or claim 
results from:
. . . .
4. Adoption or enforcement of or failure to adopt or enforce a law, whether 
valid or invalid, including, but not limited to, any statute, charter provision, 
ordinance, resolution, rule, regulation or written policy;
5. Performance of or the failure to exercise or perform any act or service 
which is in the discretion of the state or political subdivision or its 
employees;
6. Civil disobedience, riot, insurrection or rebellion or the failure to 
provide, or the method of providing, police, law enforcement or fire 
protection;
. . . .
18. An act or omission of an independent contractor or consultant or his or 
her employees, agents, subcontractors or suppliers or of a person other than an 
employee of the state or political subdivision at the time the act or omission 
occurred[.]
51 O.S.Supp.2013, Â§ 
155.
Â¶11 The Supreme Court of Oklahoma has ruled that Section 155(5)'s 
discretionary function exception to the general waiver of sovereign immunity 
under the Tort Claims Act is not as unlimited as the text appears to 
suggest:
From the outset we note that the discretionary function exemption from 
governmental tort liability is extremely limited. Robinson v. City of 
Bartlesville Bd. of Educ., 700 P.2d 1013 (Okl.1985). This is so because a broad 
interpretation would completely eradicate the government's general waiver of 
immunity. Almost all acts of government employees involve some element of choice 
and judgment and would thus result in immunity if the discretionary exemption is 
not narrowly construed. Just as the waiver is not a blue sky of limitless 
liability, the discretionary exemption is not a black hole enveloping the 
waiver.
Nguyen, 788 P.2d at 964 (footnote omitted). In view of the foregoing 
concern, the Oklahoma Supreme Court chose to adopt a "planning-operational" 
approach to understanding the scope of Section 155(5)'s discretionary exemption 
from Oklahoma's general waiver of sovereign immunity:
The majority approach under the Federal Tort Claims Act (FTCA) and similar 
state acts is the planning-operational approach. This approach is in accord with 
Robinson, at 1017. Under this approach initial policy level or planning 
decisions are considered discretionary and hence immune, whereas operational 
level decisions made in the performance of policy are considered ministerial and 
not exempt from liability.
Id. at 964-65 (footnotes omitted).[10] 
Â¶12 The Oklahoma Supreme Court has similarly narrowly construed the exemption 
found in Section 155(6) to also reflect the planning-operational approach:
Exemptions 4, 5, and 6, when read together with this Court's explanations, 
define clearly the scope of statutory immunity concerning law enforcement. The 
State and its political subdivisions enjoy immunity for the choice to adopt or 
enforce a law, the formulation of law enforcement policy, and the method by 
which policy is implemented. The exemptions do not apply to tortious acts of 
government servants in the daily implementation of policy. The blanket immunity 
the State seeks concerning police pursuits does not exist in Oklahoma's 
statutory law or jurisprudence.
State ex rel. Dep't of Pub. Safety v. Gurich, 238 P.3d 1, 4 (Okla. 2010).
Â¶13 Should a board of county commissioners choose to contract with a 
municipality, a charitable corporation, or a fire protection district to provide 
fire protection services in the county, such legal entities, being legally 
distinct from the county, would be independent contractors. Absent any 
reservation by the board of county commissioners of the right to direct or 
supervise the provision of such services, the county would be financially exempt 
from any torts committed by such independent contractors. See 
51 O.S.Supp.2013, Â§ 
155(18).
Â¶14 In summary, under the "planning-operational approach" set forth above, 
the policy decision of a board of county commissioners expressing 
its lawful discretion to either provide or not provide fire protection services 
directly, pursuant to the provisions of 19 O.S.2011, Â§ 351, or by contracting for 
such services pursuant to the authority of 19 O.S.2011, Â§Â§ 351.1, 351.3, would be 
protected by sovereign immunity from claims for financial liability pursuant to 
the exemption from its waiver provided by 51 O.S.Supp.2013, Â§ 155(4), (5), (6). 
Accordingly, a policy decision by a board of county commissioners not to 
provide fire protection services in a portion of an unincorporated area 
of the county not currently receiving fire protection services would, under 
Section 155(5), be immune from financial liability. See Carlson, 884 P.2d 
at 1211 (an entity that is given discretionary authority to provide services at 
different levels is provided immunity to determine as a matter of policy the 
level of services it is willing to provide). On the other hand, if a board of 
county commissioners decides to directly provide fire protection services in a 
portion of an unincorporated area of the county not currently receiving fire 
protection services, the actual provision of fire protection services might 
not be exempt under Section 155(5) if such services, in fact, are 
not provided or if they, in fact, are negligently provided. See Robinson, 
700 
P.2d at 1017 (once an entity exercises its discretion to perform an act, it is liable 
for harm caused by negligence committed by it in the performance of the 
act).
Â¶15 A decision by a board of county commissioners to contract with a 
municipality, a charitable corporation, or a fire protection district to provide 
fire protection services in a portion of an unincorporated area of the county 
not currently receiving fire protection services in lieu of the county directly 
providing fire protection services, is likewise immune from financial liability 
pursuant to Section 155(5). The county is also immune from liability pursuant to 
Section 155(18) for any torts committed by a legal entity contracting to perform 
the fire protection services for the county, to the extent the contracting legal 
entity is shown to be an independent contractor.

Â¶16 It is, therefore, the official Opinion of the Attorney General that:
1. A board of county commissioners has discretionary authority to provide 
fire protection services in the county, either directly or through contracts, 
but is not under an affirmative legal duty to provide such services. See 
19 O.S.2011, Â§Â§ 
351, 351.1, 351.3.
2. The legal authority conferred on boards of county commissioners to provide 
fire protection services in the county is permissive, rather than mandatory, and 
boards of county commissioners have discretion to determine as a matter of 
policy whether, when, how, and where within the county to provide fire 
protection services.
3. When a policy decision is made by a board of county commissioners to 
directly provide or not provide fire protection services in an unincorporated 
area of the county not currently receiving fire protection services the county 
is protected by sovereign immunity. See 51 O.S.2011, Â§ 155(4), (5), (6); Nguyen 
v. State, 788 P.2d 
962, 964-65 (Okla. 1990), State ex rel. Dep't of Pub. Safety v. 
Gurich, 238 P.3d 
1, 4 (Okla. 2010).
4. When a policy decision is made by a board of county commissioners to 
directly provide fire protection services in an unincorporated area of the 
county not currently receiving fire protection services, any torts committed in 
operationally carrying out that policy are not shielded from financial liability 
by sovereign immunity. See Nguyen, 788 P.2d at 964-65; State ex rel. 
Dep't of Pub. Safety, 238 P.3d at 4.
5. When a policy decision is made by a board of county commissioners to not 
directly provide fire protection services in an unincorporated area of the 
county not currently receiving fire protection services, but instead to contract 
with a municipality, charitable corporation, or a fire protection district to 
provide such fire protection services in such area, the county is protected from 
financial liability by sovereign immunity. See 51 O.S.2011, Â§ 155(5); Nguyen, 788 
P.2d at 964-65; State ex rel. Dep't of Pub. Safety, 238 P.3d at 4. 
6. When a policy decision is made by a board of county commissioners to not 
directly provide fire protection services in an unincorporated area of the 
county not currently receiving fire protection services, but instead to contract 
with a municipality, charitable corporation, or a fire protection district to 
provide such fire protection services in such area, the county is immune from 
any torts operationally committed by the contracting entity if the contracting 
entity is found to be an independent contractor. 51 O.S.Supp.2013, Â§ 155(18).
E. SCOTT PRUITT
Attorney General of Oklahoma
CHARLES S. ROGERS
Senior Assistant Attorney General 

FOOTNOTES
[1] In addition to the 
general authority to provide fire protection services in the county, boards of 
county commissioners are also authorized to acquire real property for right-of- 
ways and easements needed for the construction of roads and the installation of 
dry hydrants required for fire protection services, and to use county funds and 
equipment for such purposes. 19 O.S.2011, Â§ 351(B). Additionally, boards 
of county commissioners are authorized, upon request, to use county personnel 
and county equipment to fight fires where an emergency is deemed to exist. 
Id. Â§ 351(C). 
[2] The rural territory served by a rural fire department 
organized under subsection D must be contiguous within its boundaries; it may 
not exclude unincorporated, rural areas that are completely surrounded by 
territory otherwise included within the boundaries to be served. See 
19 O.S.2011, Â§ 
351(D)(1). 
[3] The permissive authority of a board of county 
commissioners found in Section 351 to provide fire protection services "in the 
county" must be distinguished from the mandatory duty of county 
road workers to fight and control fires located in the right of way of county 
roads. See 2 O.S.2011, Â§ 
16-22, providing:

Every member of a road construction or maintenance crew, whether 
employed by the State Highway Department or county 
commissioners of any county, and every road contractor or subcontractor 
of the Highway Department or county commissioners and their employees 
shall keep all fires under control and confined to the right-of-way 
of any state, county or public road, or highway on and adjacent to which the 
crew, contractor, subcontractor, and employees are employed.

Id. (emphasis added). Use of the word "shall" is generally understood to 
be expressive of a command equivalent to the use of the word "must." See 
State ex. rel. Macy v. Freeman, 814 P.2d 147, 153 (Okla. 1991). Willful refusal, 
failure, or neglect to perform this specific duty is a misdemeanor. See 
2 O.S.2011, Â§ 16-24. 
[4] Fire protection districts are expressly excluded from 
the statutes pertaining to county fire departments. See 19 O.S.2011, Â§ 351.2. See also Pub. 
Serv. Co. v. Nw. Rogers Co. Fire Prot. Dist., 675 P.2d 134, 137 (Okla. 1983) (finding that counties 
have no substantial power over nor responsibility for fire protection districts, 
and such districts are not "county corporations"). 
[5] Funds that may be available in the county's general 
fund may include both sales tax revenues as levied and approved by the voters 
(68 O.S.2011, Â§ 
1370(A)), and ad valorem tax revenues or other monies lawfully appropriated 
to the fund. See, c.f., A.G. Opin. 96-70, at 148. 
[6] A.G. Opin. 80-15, at 28, concluding in part that county 
highway funds could not be used to fund fire protection contracts with a 
municipality, has been superceded by a subsequent amendment to 19 O.S.2011, Â§ 351.1, that now specifically 
authorizes the such use of such funds and is hereby withdrawn as to that 
conclusion. 
[7] A.G. Opin. 82-251, at 382-83, concluding in part that 
counties could not appropriate monies to a fire protection district for fire 
protection services, has been superceded by the subsequent enactment of 
19 O.S.2011, Â§ 351.3 and is hereby formally 
withdrawn. See also A.G. Opin. 96-70, at 149-50 (finding specific legal 
authority for counties to contract with fire protection districts for fire 
protection services). 
[8] Limits on the extent of the waiver of financial 
liability for harms caused by tort are set forth in 51 O.S.2011, Â§ 154. 
[9] Section 155's list of exemptions to the general waiver 
of sovereign immunity has grown from 30 to 37 since the court issued its opinion 
in Nguyen. See 51 O.S.Supp.2013, Â§ 155. 
[10] Other cases applying this approach are Robinson v. 
City of Bartlesville Board of Education, 700 P.2d 1013, 1017 (Okla. 1985) (holding that the 
negligent maintenance of a parking lot operated by the Board of Education was an 
operational level decision and not exempt from liability) and Carlson v. City 
of Broken Arrow, 884 P.2d 1209, 1212 (Okla. Civ. App. 1994) (affirming 
the dismissal of a widow's claim that her husband would have survived a heart 
attack but for inadequate care available in the city's Level I ambulance, 
holding that the City of Broken Arrow's decision to provide Level I ambulance 
care instead of Level IV ambulance care was a policy decision that exempted the 
city from liability). The Legislature appears to have acceded to the Oklahoma 
Supreme Court's interpretation of Section 155(5) since it has not since chosen 
to amend Section 155(5) to broaden the 
exemption.




 CitationizerÂ© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Civil Appeals Cases
Â 
Cite
Name
Level
Â 
1994 OK CIV APP 119, 884 P.2d 1209, 65 OBJ 3926, 
Carlson v. City of Broken Arrow
Cited
Â 
1999 OK CIV APP 97, 990 P.2d 906, 70 OBJ 3481, 
Kroth v. City of Oklahoma City
Cited
Oklahoma Supreme Court Cases
Â 
Cite
Name
Level
Â 
1940 OK 299, 103 P.2d 527, 187 Okla. 408, 
HULLUM v. R. J. EDWARDS Inc.
Cited
Â 
1990 OK 21, 788 P.2d 962, 61 OBJ 674, 
Nguyen v. State
Discussed
Â 
1991 OK 59, 814 P.2d 147, 62 OBJ 2013, 
State ex rel. Macy v. Freeman
Cited
Â 
1969 OK 31, 450 P.2d 902, 
MORGAN v. WILSON
Cited
Â 
1970 OK 67, 468 P.2d 501, 
TULSA EXPOSITION & FAIR CORP. v. BD. OF CO. COM'RS
Cited
Â 
2009 OK 73, 237 P.3d 125, 
STATE ex rel. OKLA. FIREFIGHTERS PENSION AND RETIREMENT SYSTEM v. CITY OF SPENCER
Cited
Â 
2010 OK 56, 238 P.3d 1, 
STATE ex rel. OKLAHOMA DEPT. OF PUBLIC SAFETY v. GURICH
Discussed
Â 
2011 OK 50, 256 P.3d 69, 
HUBBARD v. KAISER-FRANCIS OIL COMPANY
Cited
Â 
1983 OK 96, 675 P.2d 134, 
Public Service Co. of Oklahoma v. Northwest Rogers County Fire Protection Dist.
Cited
Â 
1985 OK 39, 700 P.2d 1013, 56 OBJ 1143, 
Robinson v. City of Bartlesville Bd. of Educ.
Discussed
Title 2. Agriculture
Â 
Cite
Name
Level
Â 
2 O.S. 16-22, 
Road Crews Extinguish Fires
Cited
Â 
2 O.S. 16-24, 
Refusal of Road Crews
Cited
Title 11. Cities and Towns
Â 
Cite
Name
Level
Â 
11 O.S. 29-105, 
Municipalities and Fire Protection Districts - Contracts
Cited
Title 18. Corporations
Â 
Cite
Name
Level
Â 
18 O.S. 592, 
Fire Departments for Unincorporated Areas - Authority to Incorporate
Cited
Title 19. Counties and County Officers
Â 
Cite
Name
Level
Â 
19 O.S. 351, 
Fire Fighting Service - Authority to Provide
Discussed at Length
Â 
19 O.S. 351.1, 
Counties - Agreements for Fire Protection and Emergency Services by Municipalities
Discussed at Length
Â 
19 O.S. 351.2, 
Exclusions
Cited
Â 
19 O.S. 351.3, 
Agreements with Nonprofit Volunteer or Full-time Fire Department
Discussed
Â 
19 O.S. 901.2, 
Petition - Contents
Cited
Â 
19 O.S. 901.7, 
Powers of Directors
Cited
Title 51. Officers
Â 
Cite
Name
Level
Â 
51 O.S. 154, 
Extent of Liability
Cited
Â 
51 O.S. 155, 
Exemptions From Liability
Discussed at Length
Â 
51 O.S. 151, 
Short Title
Cited
Â 
51 O.S. 152.1, 
Adoption of Doctrine of Sovereign Immunity
Cited
Title 62. Public Finance
Â 
Cite
Name
Level
Â 
62 O.S. 431, 
Sinking Fund - Levy for - Omission to Make - Additional Levy
Cited
Title 68. Revenue and Taxation
Â 
Cite
Name
Level
Â 
68 O.S. 1370, 
County Sales Tax - Exemptions - Purpose - Duration - County Sales Tax Revolving Fund
Cited
Title 85. Workers' Compensation
Â 
Cite
Name
Level
Â 
85 O.S. 3, 
Repealed by Laws 2011, SB 878, c. 318, Â§ 87
Cited