Orlen CURTIS and Tammie Curtis,
Individually, and as next of friends
of Clifton Curtis, Respondents,

v.

The BOARD OF EDUCATION OF SAYRE
PUBLIC SCHOOLS, Sayre Public
School District I–31, Beckham County,
Oklahoma, Petitioner.

No. 84567.

Supreme Court of Oklahoma.

Oct. 31, 1995.

Rehearing Denied April 18, 1996.

Jake Jones III, Driskill & Jones, Oklahoma City, for Petitioner.

Mark W. Albert, Elk City, for Respondents.

WATT, Justice:

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

On May 16th, 1994, 12-year-old Clifton Curtis was participating in a softball game in his Sayre public school physical education class. Clifton's teacher instructed him to play the position of catcher, but did not supply Clifton with a catcher's mask. Clifton was thereafter severely injured when he was hit in the mouth with a baseball bat.

Clifton's parents, Orlen and Tammie Curtis, filed suit against the Board of Education of Sayre Public Schools (School), alleging the school district was negligent in failing to provide Clifton with a catcher's mask. The School moved to dismiss the suit for failure to state a claim upon which relief could be granted, contending that it was immune from liability under § 155(20) of the Governmental Tort Claims Act, 51 O.S.1991 § 151, et seq. The trial court sustained the School's motion to dismiss. The Court of Appeals reversed, ruling that § 155(20) applies only to interscholastic or substantially similar athletic contests. It held that competitive activities in which student participation is required as part of the educational curriculum do not fall within the immunity protection of § 155(20). This Court granted the School's petition for writ of certiorari on April 26, 1995.

## ISSUE

■ In a case of first impression, we are asked to determine whether § 155(20) of the Governmental Tort Claims Act, 51 O.S.1991 § 151, et seq., provides governmental immunity for losses resulting from school-sponsored athletic contests which are not interscholastic athletic contests. We answer this question in the affirmative, vacate the opinion of the Court of Appeals and affirm the trial court's order of dismissal.

## DISCUSSION

■ In the landmark case of *Vanderpool v. State,* 672 P.2d 1153 (Okla.1983), this Court abrogated the judicially established doctrine of sovereign immunity, but left unaffected the power of the legislature to regulate governmental tort liability. In response to *Vanderpool,* the Oklahoma Legislature enacted the Governmental Tort Claims Act, 51 O.S.Supp.1984 § 151, et seq. The Act both adopted the doctrine of sovereign immunity

and waived that immunity "only to the extent and in the manner provided in" the Act. 51 O.S.Supp.1984 § 152.1. In limiting the waiver of sovereign immunity, the Legislature has to date carefully enumerated thirty-one exemptions from liability. 51 O.S.Supp.1994 § 155. As we noted in *Fuller v. Odom*, 741 P.2d 449, 452 (Okla.1987), the Act is the exclusive remedy against a governmental entity in this State; the only recovery available in tort against a political subdivision must be found within the boundaries defined by the Act.

When first enacted, § 155(20) of the Act provided that a political subdivision shall not be liable for losses resulting from "[p]articipation in or practice for any interscholastic athletic contest." Effective October 1, 1985, the statute was amended to read:

A political subdivision shall not be liable if a loss or claim results from:

\* \* \* \* \* \*

20. Participation in or practice for any interscholastic *or other athletic contest* sponsored or conducted by or on the property of the state or a political subdivision;
. . . .

51 O.S.Supp.1984 § 155(20) (emphasis added). The amended version of § 155(20) was in effect at the time Clifton Curtis was injured and has not since been modified.

The Curtis family argues, and a majority of the Court of Appeals agreed, that the term "other athletic contest" in subsection 20 must be interpreted to mean other athletic contest similar in character to "interscholastic" [1] athletic contest. Although the policy considerations discussed by the appellate court are compelling [2], we must reject its conclusion for several reasons. First, as an elementary

matter, we find that the Court of Appeals' definition of the word "other" is erroneous when applied to subsection 20. The appellate court's sole citation of authority in its majority opinion is to the definition of "other" from *Black's Law Dictionary* (5th ed. 1979). In its totality, *Black's* defines "other" as:

Different or distinct from that already mentioned; additional, or further. Following an enumeration of particular classes "other" must be read as "other such like," and includes only others of like kind and character.

*Id.* at 992.

The appellate court determined that the second sentence of the above definition applies to § 155(20). We note, however, that subsection 20 does not include "an enumeration of particular classes" before the word "other" appears. Subsection 20 lists but a *singular* class, that of an "interscholastic" athletic contest, prior to its mention of an "other" athletic contest. Therefore, the second sentence of *Black's* definition is inapplicable here. Applying the first definition set forth above, we conclude that the "other" athletic contest mentioned in § 155(20) refers to an athletic contest "different or distinct from [the interscholastic athletic contest] already mentioned" in the statute. *See also The American Heritage Dictionary* 880 (2nd College ed. 1985) ("other" defined *inter alia* as "[d]ifferent from that or those implied or specified" and "[o]f a different character or quality").

Second, if the Court of Appeals' interpretation of § 155(20) were correct—that governmental immunity extends only to losses resulting from interscholastic or substantially similar athletic contests—then we would be

---

1. "Interscholastic" is defined as "[e]xisting or conducted between or among schools." *The American Heritage Dictionary* 672 (2nd College ed. 1985).

2. The Court of Appeals reasoned:
   The chief distinguishing characteristics of interscholastic contests are that (1) participation in them is voluntary, and (2) they are largely extracurricular activities.
   Granting a school immunity from liability for injuries to participants in such activities properly leaves the risk of injury on those who

willingly choose to participate. Such persons generally have the opportunity to anticipate the dangers and to guard or insure against them. This is sound policy. However, a policy consideration of equal force supports the sharing of the risk of injury by our schools for competitive activities in which student participation is required as part of the educational curriculum. Such liability reinforces the school's paramount duty to use due care in supervising and instructing children, and to protect them from foreseeable dangers.

forced to concede that the Legislature's amendment to this subsection was done in vain. As previously set forth, the original version of § 155(20) referred only to "interscholastic athletic contest." Under the appellate court's reasoning, the addition of the term "other athletic contest" to the provision added nothing to the statute.

■ This Court has consistently held that the Legislature will never be presumed to have done a vain and useless act in promulgating a statute. *TRW/Reda Pump v. Brewington*, 829 P.2d 15, 20 (Okla.1992); *Farris v. Cannon*, 649 P.2d 529, 531 n. 4 (Okla.1982). To the contrary, we employ the presumption "that every provision of our statutes has been intended for some useful purpose and should be given effect." *Hunt v. Washington Fire & Marine Ins. Co.*, 381 P.2d 844, 847 (Okla.1963). Thus, we must presume that the Legislature's inclusion of the word "other" in the amended version of § 155(20) has some useful purpose; that being broadened protection for political subdivisions against losses resulting from athletic contests sponsored or conducted by or on the property of the government.[3]

■ The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed in a statute. *Wal–Mart Stores, Inc. v. Switch*, 878 P.2d 357, 359 (Okla.1994); *Public Service Co. of Oklahoma v. State ex rel. Corp. Comm'n*, 842 P.2d 750, 752 (Okla.1992). "[W]here the language of a statute is plain and unambiguous and the meaning clear and unmistakable, there is no room for construction, and no justification exists for interpretative devices to fabricate a different meaning." *Anson Corp. v. Hill*, 841 P.2d 583, 585 (Okla.1992), quoting *In re Guardianship of Campbell*, 450 P.2d 203, 205 (Okla.1966). In the absence of a contrary definition, words in a statute "are to be given the same meaning as that attributed to them by ordinary and common definitions." *Anson Corp.*, 841 P.2d at 585. *See also* 25 O.S.1991 § 1.

We have already determined that the word "other" in § 155(20) refers to an athletic contest different or distinct from an athletic contest conducted between or among schools. To conclude otherwise would be to fabricate a meaning different from the clear meaning expressed by the plain language of the statute. Because there is no dispute that Clifton suffered his injuries in a school-sponsored activity on school property, the last issue to be decided is whether a physical education class softball game is an "athletic contest" within the meaning of § 155(20).

The word "athletic" is defined as "[o]f, pertaining to, or befitting athletics or athletes." *The American Heritage Dictionary*, *supra.* at 138. "Athletics" is defined as "[a]thletic activities, as competitive sports" or "[t]he principles or system of athletic exercises and training," while the word "athlete" is primarily defined as "[o]ne who takes part in competitive sports." *Id.* The word "contest" is defined as "[a] struggle for superiority or victory between rivals" or "[a] competition. . . ." *Id.* at 316. Applying the above definitions to the facts of this case, we conclude that the phrase "athletic contest" is sufficiently broad to encompass a physical education class softball game. Clearly, softball is a competitive sport where participant/team members strive to defeat an opposing team.

## CONCLUSION

■ The "other" athletic contest mentioned in § 155(20) refers to an athletic contest different or distinct from an "interscholastic" athletic contest conducted between or among schools. The phrase "athletic con-

---

3. As Judge Taylor astutely noted in his separate opinion below:

When the legislature expanded the statute to include "other . . . contest[s] sponsored or conducted by or on" school property, I believe it intended to include athletic contests other than those between schools. If such was not the case, there would have been no need to change the statute.

Students frequently suffer minor injuries from participation in athletic activity, while they seldom get hurt in their history or math classes. It appears that the legislature decided to change the degree of insulation granted to schools in the area of athletic activity. . . .

test" connotes an athletic or sports competition where participants strive for superiority or victory. Thus, § 155(20) encompasses participation in or practice for any athletic or sports competition where participants strive for superiority or victory, whether interscholastic or not, sponsored or conducted by or on the property of the state or political subdivision. A physical education class softball game, sponsored by a public school and conducted on school property falls within the parameters of § 155(20), and the school is shielded from liability for losses resulting therefrom.

Certiorari previously granted. The opinion of the Court of Appeals is vacated. The judgment of the district court is affirmed.

HODGES, LAVENDER, HARGRAVE and OPALA, JJ., concur.

ALMA WILSON, C.J., KAUGER, V.C.J., and SIMMS and SUMMERS, JJ., dissent.

SUMMERS, Justice, dissenting, with whom KAUGER, V.C.J. joins and SIMMS, J. joins in part.

The majority reasons that when the Legislature added "or other athletic contest" to the exemption statute, 51 O.S.1991 § 155(20), the new language must include this gym class softball game or the amendment means nothing at all. Not so. I believe that "any interscholastic or other athletic contest" should be read to mean any organized contest between schools *or any intramural game sponsored or conducted by the school.*

Participation in intramural sports, as in interscholastic sports, is voluntary. The games take place at a pre-determined time. They are generally conducted by a referee or umpire connected with the school. If voluntary participation in interscholastic sports means giving up the right to sue, then, under the language of the amended statute, it makes sense that voluntary participation in intramural sports means the same.

I would not include in the phrase "other athletic contest" such casual activities as pickup games, workup softball, nor anything happening in a gym class for school credit. *Physical education may be mandatory in the Oklahoma public schools if the local school* board approves the course. 70 O.S.1991 § 11–103B3.

This student was in class. He was told by his teacher to assume the catcher's position. He was hurt when the school failed to furnish him the most basic piece of equipment, a catcher's mask. If a student is injured in some procedure he is required to undergo, by the negligence of someone to whom the student cannot "just say no", then this statute should not be read so broadly as to let the responsible party evade responsibility as a matter of law. I would not extend § 155(20)'s immunity to include this gym class softball game, but would let a jury decide whether the school district or his parents should pay for Clifton's teeth.