2002 OK CIV APP 46

Deborah A. HULL, Guardian of the Person and Estate of Ty Bryant Hull, a Disabled Person, and Ty Bryant Hull, Plaintiffs/Appellants,

v.

WELLSTON INDEPENDENT SCHOOL DISTRICT I 004, Lincoln County 41, and Glendon Forgey, Keith Stingley, Steve Ledford, Jimmy Davis, Linda Carlton, as Members of the Board of Education of Wellston Independent School District I 004, Lincoln County 41, Defendant/Appellee.

No. 96293.

Court of Civil Appeals of Oklahoma, Division No. 2.

Dec. 14, 2001.

Rehearing Denied Jan. 15, 2002.

Certiorari Denied March 26, 2002.

W. Terry Flaugher, Oklahoma City, OK, for Appellants.

Tim D. Cain, Wilson, Cain & Acquaviva, Oklahoma City, OK, for Appellee.

TOM COLBERT, Judge.

¶ 1 Deborah A. Hull and Ty Bryant Hull appeal the trial court's grant of summary judgment in favor of Wellston Independent School District I 004, Lincoln County 41(School District).[1] The issue on appeal in this action for personal injury is whether the trial court erred in finding that the Governmental Tort Claims Act (GTCA), 51 O.S.1991 Supp.2000 §§ 151–258, precluded Deborah from pursuing her claims against School District. Based upon our review of the record and applicable law, we find the court did not err and affirm its order.

## BACKGROUND

¶ 2 In August 1998, Ty, a student at Wellston High School, suffered an intra-cerebral hemorrhage while participating in a practice football game between Wellston and Bethel High School. The game was held at the Bethel football field in Bethel, Oklahoma. Ty also suffered a broken collar bone and a punctured lung. As a result of his injuries, he became permanently disabled.

---

1. Although Ty Hull is listed as a Plaintiff/Appellant, it is apparent that Deborah initiated this suit on Ty's behalf. Thus, from this point on, we will refer to Deborah as the party who has brought this suit.

¶ 3 In May 2000, Deborah, Ty's mother and legal·guardian, filed suit against School District and members of School District's board of education. She alleged that School District's employees, specifically the football coaches, knew or had reason to know that Ty did not have parental consent to participate in the game and that he had not undergone the prerequisite medical examination; that the coaches knew Ty did not have a safe, proper helmet and had been experiencing undiagnosed medical problems for one month prior to the game; that School District failed to train its employees to recognize the symptoms of head injury and provide emergency medical care to injured players; and that School District failed to implement and maintain procedures whereby injured players could receive emergency medical care and transportation to medical facilities.

¶ 4 In September 2000, School District filed a motion to dismiss for failure to state a claim upon which relief can be granted, arguing that section 155(20) of the GTCA, 51 O.S. Supp.2000 § 155 (20), barred Deborah's claims. Deborah responded that School District's willful and wanton negligence in hiring the football coaches placed it outside the protection of the GTCA.

¶ 5 Because School District's motion to dismiss contained evidentiary materials outside the pleadings, the trial court treated it as a motion for summary judgment.[2] In an order filed April 18, 2001, the trial court found that School District was entitled to summary judgment because the GTCA prohibits Deborah's claims.[3] Deborah appeals.

## STANDARD OF REVIEW

■ ¶ 6 "Summary judgment is proper only when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Davis v. Leitner,* 1989 OK 146, ¶ 9, 782 P.2d 924, 926; *see also* District Court Rule 13, 12 O.S. Supp.2000, ch. 2, app. 1. In this case, the material facts are not in dispute, and the issue we must determine is whether the GTCA prohibits Deborah's claims against School District. This presents a question of law which we review de novo, meaning that we have "plenary, independent and non-deferential authority *to re-examine a trial court's legal rulings." See Salazar v. City of Okla. City,* 1999 OK 20, ¶ 19 n. 32, 976 P.2d 1056, 1064 n.32.

## DISCUSSION

■ ¶ 7 In *Vanderpool v. State,* 1983 OK 82, 672 P.2d 1153, the Oklahoma Supreme Court abrogated the doctrine of sovereign immunity. The GTCA, the legislature's response to *Vanderpool,* both adopted the doctrine of sovereign immunity and waived it "only to the extent and in the manner provided in" the GTCA. *See* 51 O.S.1991 § 152.1; *Curtis v. Board of Educ. of Sayre Pub. Sch.,* 1995 OK 119, ¶ 4, 914 P.2d 656, 657–58. In the GTCA, the legislature has enumerated thirty-two exemptions from liability. *See* 51 O.S. Supp.2000 § 155. The GTCA is the exclusive remedy against a governmental entity or political subdivision in this State. *See Curtis,* 1995 OK 119, ¶ 4, 914 P.2d at 658.

¶ 8 Section 155(20) of the GTCA, the athletic contest exemption, provides:

EXEMPTIONS FROM LIABILITY
The state or a political subdivision shall not be liable if a loss or claim results from:
* * *

Participation in or practice for any interscholastic or other athletic contest sponsored or conducted by or on the property of the state or a political subdivision.

51 O.S. Supp.2000 § 155 (20). The Oklahoma Supreme Court discussed this exemption in

---

2. See 12 O.S. Supp.2000 § 2012 (B)· ("If ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.").

3. On June 25, 2001, the court issued a *nunc pro tunc* order, reflecting that Deborah had not yet obtained service of process on any of the individually named board members, and that, because she had sued the board members only in their official capacities, there was only one defendant, School District. The order stated that the summary judgment was binding on School District and all board members. This made the previously rendered summary judgment a final judgment, allowing the appeal to proceed.

*Curtis* and *Evans v. Oaks Mission Public School,* 1997 OK 97, 945 P.2d 492. We find these cases dispositive.

¶ 9 In *Curtis,* a teacher instructed a student to play catcher in a softball game during physical education class but failed to provide him with a mask. The student was injured when he was struck in the mouth with a bat. The student's parents alleged negligence on the part of the school district. The issue in *Curtis* was whether section 155(20) provides governmental immunity for school-sponsored athletic contests which are not interscholastic contests. The court construed section 155(20) very strictly and held that a physical education softball class falls within the purview of the statute. *Curtis, 1995 OK 119,* ¶ 12, *914 P.2d at 659.* The court explained that section 155(20) "encompasses participation in or practice for any athletic or sports competition where participants strive for superiority or victory, whether interscholastic or not, sponsored or conducted by or on the property of the state or political subdivision." *Id.* at ¶ 13, 914 P.2d at 660.

¶ 10 In *Evans,* a high school student was injured while participating in a wrestling match during physical education class. He had suffered previous injuries and had been told by his parents to refrain from participating in sports during his junior year. Initially, the student did not enroll in physical education classes. However, with his parents' knowledge, he later changed his schedule and enrolled in a physical education class taught by the football coach.

¶ 11 The mother sued, alleging negligence and gross negligence on the part of the school district and three teachers in failing to supervise and protect the student and in encouraging him to injure himself. The mother subsequently dismissed her claims against the teachers. The school district moved for summary judgment, asserting section 155(20) as a bar to the mother's claims. The mother responded that the school district was negligent in allowing the student to participate in the match when he had both parental and medical restrictions against participation in any sports. She further argued that, because the school district ignored her warning, it should not be shielded from liabil-

ity. The school district then argued the parents knew of the change in the student's schedule and approved it. The trial court granted summary judgment in favor of the school district, and the Court of Civil Appeals reversed the judgment on the ground that there remained a question of material fact as to whether the school district was negligent.

¶ 12 The Supreme Court did not address whether there was a fact question as to the school district's negligence. Relying upon *Curtis,* the court held that summary judgment was appropriate because the school district was immune from liability pursuant to section 155(20). *Evans,* 1997 OK 97, ¶ 10, 945 P.2d at 494. In strictly construing the statute, the court considered only two factors: (1) the student was participating in an athletic contest at the time he was injured, and (2) the injury occurred on school property. *Id.* at ¶ 9, 945 P.2d at 494.

¶ 13 Based upon *Curtis* and *Evans,* we hold that School District is immune from liability pursuant to section 155(20). Ty was participating in a practice athletic contest at the time he was injured, and the contest was sponsored and conducted by School District. Thus, summary judgment in favor of School District was appropriate.

¶ 14 Deborah attempts to circumvent the holdings of *Curtis* and *Evans* in two ways. First, she argues, as she did below, that School District was negligent in hiring, retaining, training, and supervising its football coaches. She relies upon *Doe v. Durtschi,* 110 Idaho 466, 716 P.2d 1238 (1986), to support this argument.

¶ 15 In *Doe,* female elementary students and their parents sued a teacher and school district, alleging that the teacher sexually molested the students. They further alleged that the school district breached its duty of care because it knew of the teacher's acts but allowed him to continue teaching the students, and it knew or should have known the teacher had previously molested other children. When the school district moved for summary judgment on the negligence claim, the trial court granted the motion on the ground that the plaintiffs were precluded from recovery under the assault and battery

exception to the Idaho Tort Claims Act. The assault and battery exception exempted government agencies from tort liability arising out of an assault or battery by a government employee.

¶ 16 When the parents appealed to the Idaho Supreme Court, the school district argued that the parents' negligence claim arose out of the teacher's assault and battery on the children, and therefore, the school district was immune from liability. The supreme court held that the school district was not immune from liability. *Id.* at 1245. The court reasoned that there is a distinction between conduct which forms the basis of a negligence claim and that which forms the basis of an assault and battery claim. *Id.* at 1243. The court further reasoned that the school district had a statutory duty to exercise due care to protect its students from harm, and that the teacher's actions were a forseeable consequence of the school district's alleged failure to perform that duty. *Id.* at 1244.

¶ 17 We decline to follow *Doe* for several reasons. First, not only is *Doe* factually distinguishable, the case preceded *Curtis* and *Evans* and is foreign case law. *Curtis* and *Evans* are controlling in this jurisdiction, and *Evans*, particularly, involved arguments similar to the ones made here. Next, the exemption involved in *Doe* was for a specific cause of action, assault and battery. The exemption provided by section 155(20) is much more broad in scope and precludes *all* causes of action *resulting from* participation in or practice for any athletic contest which is sponsored or conducted by, or on the property of, the school district. Finally, the court in *Doe* pointed out that a majority of federal courts barred negligence claims against the government when such negligence was alleged to be the proximate cause of an assault or battery by a government employee. *Doe, 716 P.2d at 1244.*

¶ 18 Deborah also attempts to circumvent *Curtis* and *Evans* by arguing that School District acted willfully, wantonly, and recklessly in hiring, retaining, and supervising the football coaches. She argues that wanton and reckless conduct places School District outside the protection of the GTCA. In support of this argument, she relies upon *Holman v. Wheeler,* 1983 OK 72, 677 P.2d 645, and *Lanning v. Anderson,* 22 Kan. App.2d 474, 921 P.2d 813 (1996).

¶ 19 *Holman* involved section 153 of the GTCA, which provides that the state or its political subdivisions shall not be liable for torts committed by employees acting within the scope of their employment. The plaintiffs in *Holman* brought a tort action against a school superintendent who allegedly used excessive force while disciplining a student. The superintendent invoked the GTCA, arguing that the petition was insufficient because it did not allege that written notice was filed, as required by the GTCA. The plaintiffs argued that the superintendent's actions were unlawful, outside the scope and course of his employment, and constituted a willful assault and battery upon the student.

¶ 20 The court held that the superintendent could not claim the protection of the GTCA. *Holman,* 1983 OK 72, ¶ 15, 677 P.2d at 647–48. The court explained, "Although officers and employees of governmental agencies, including the State, are protected from tort liability while performing discretionary functions within the scope of their employment, such protection does not render such employees immune from liability for willful and wanton negligence or conduct which places the employees outside the scope of their employment." *Id.* at ¶ 13, 677 P.2d at 647.[4]

¶ 21 *Holman* is inapposite to the present case. The plaintiffs in *Holman* sued only the superintendent; they did not sue the school

4. The court in *Holman v. Wheeler,* 1983 OK 72, 677 P.2d 645, effectively held that plaintiffs need not comply with the notice provision of the Governmental Tort Claims Act where they allege that an employee's willful or wanton conduct places the employee outside the scope of employment. *Holman* was superseded on the issue of notice by an amendment to section 153 of the GTCA. 51

O.S.1991 § 153. *See Leding v. Pittsburg County District Court,* 1996 OK CIV APP 107, ¶ 5, 928 P.2d 957, 958. In *Leding,* this court held that plaintiffs must always comply with the notice provisions of the GTCA, even where they allege that an employee's conduct was willful or wanton. *Id.* at ¶ 7, 928 P.2d at 958.

district. *Holman* does not support the proposition that a school district loses the protection of the GTCA by wanton and reckless conduct of its employees or members of the board.

¶ 22 Although Deborah alleged that the Wellston football coaches and board members committed various acts which constitute wanton and reckless conduct, she has not named the coaches as parties, and she did not serve the board members in their individual capacities. Therefore, the only defendant is the school district. This court has no jurisdiction over the members of the board of education in their individual capacities. *See Love v. Hayden,* 757 F.Supp. 1209, 1211 (D.Kan.1991) and *Jackson v. Hayakawa,* 682 F.2d 1344, 1347 (9th Cir.1982) (explaining that a court has no jurisdiction over government officials in their individual capacities where they have not been served in accordance with the applicable statute). *See generally* 12 O.S. Supp.2000 § 2004 (indicating that individuals and entities are served separately).

¶ 23 *Lanning* involved the recreational use exception of the Kansas Tort Claims Act. A student athlete who was hit by a discus while crossing the playground after practice sued the coach and the board of education, alleging gross and wanton negligence. The recreational use exception shields governmental entities and employees acting within the scope of employment from "any claim for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes, unless the governmental entity or an employee thereof is guilty of gross and wanton negligence proximately causing such injury." *Lanning,* 921 P.2d at 818. The court held that there was no evidence to support a finding of gross or wanton negligence. *Id.* at 820.

¶ 24 Deborah argues that *Lanning* supports the proposition that wanton and reckless conduct removes the cloak of immunity provided by the GTCA. However, a critical difference between Oklahoma's GTCA and the Kansas act is that the Kansas act specifically imposes liability upon governmental entities and employees found guilty of gross and wanton negligence when such negligence proximately causes injury. Such a provision is not included in the GTCA. Moreover, the relevant provision of the Kansas act pertains to governmental entities and their employees, whereas section 155(20) specifically exempts political subdivisions, such as school districts. *Lanning,* therefore, is unpersuasive.

¶ 25 School District calls our attention to *United States v. Shearer,* 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), which we find instructive. There, an off-duty Army serviceman was kidnapped and murdered by another serviceman. The decedent's mother sued the Army under the Federal Tort Claims Act (FTCA), alleging that the Army's negligence in controlling the attacker and in warning of his dangerous propensities caused her son's death.

¶ 26 The Supreme Court held that the FTCA barred the mother's claim against the Army. *Id.* at 55, 105 S.Ct. at 3041. The Court explained that the FTCA's waiver of sovereign immunity does not apply to claims arising out of assault or battery. The Court further explained, "it is clear that [the mother's] claim arises out of the battery committed by [the Army serviceman]. No semantical recasting of events can alter the fact that the battery was the immediate cause of [the decedent's] death and, consequently, the basis of [the mother's] claim." *Id.* at 54–55, 105 S.Ct. at 3041. The Court added, "[The mother] cannot avoid the reach of [the statute] by framing her complaint in terms of negligent failure to prevent the assault and battery. [The statute] does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery." *Id.* at 55, 105 S.Ct. at 3041.

¶ 27 Similarly, we conclude that Deborah cannot escape the reach of section 155(20) by recasting her complaint in terms of negligent/wanton and reckless hiring. Section 155(20) excludes any claim *resulting from* participation in or practice for athletic contests sponsored or conducted by, or on the property of, the school district. Because Deborah's negligent/wanton and reckless hiring claim is based upon an injury to Ty which

*resulted from* his participation in a practice football game, and because this claim would otherwise lack legal significance, it is precluded by section 155(20).

¶ 28 Although Deborah has cited several additional cases from Oklahoma and other jurisdictions, she has provided no authority which supports her contention that School District's negligent or wanton and reckless hiring of employees places it outside the protection of the GTCA. Therefore, we are bound by our Supreme Court's decisions in *Curtis* and *Evans* and conclude that the trial court did not err in granting summary judgment in favor of School District.[5]

## CONCLUSION

¶ 29 This court is not unsympathetic to Ty's injuries. However, section 155(C) of the GTCA must be strictly construed and it provides immunity to school districts for claims *resulting from* participation in or practice for interscholastic or other athletic contests sponsored or conducted by, or on the property of, the school district. The trial court's grant of summary judgment is affirmed.

¶ 30 AFFIRMED.

¶ 31 REIF, V.C.J., and GOODMAN, P.J., concur.

---

5. We also note the policy considerations relied upon by this court and quoted in *Curtis v. Board of Education of Sayre Public Schools,* 1995 OK 119, 914 P.2d 656. Regarding school district immunity for students' participation in interscholastic contests, this court reasoned, "Granting a school immunity from liability for injuries to participants in such activities properly leaves the risk of injury on those who willingly choose to participate. Such persons generally have the opportunity to anticipate the dangers and to guard or insure against them. This is sound policy." *Id.* at ¶ 6 n. 2, 914 P.2d at 658 n.2.