OSCN Found Document:HASENFRATZ v. PONCA CITY INDEPENDENT SCHOOL DISTRICT

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 HASENFRATZ v. PONCA CITY INDEPENDENT SCHOOL DISTRICT
2015 OK CIV APP 82
Case Number: 114063
Decided: 09/21/2015
Mandate Issued: 10/15/2015
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2015 OK CIV APP 82, __ P.3d __

 

TROY HASENFRATZ, individually and as a parent and guardian of M.H., a minor, Plaintiff/Appellant,
v.
PONCA CITY INDEPENDENT SCHOOL DISTRICT, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
KAY COUNTY, OKLAHOMA

HONORABLE PHILIP A. ROSS, TRIAL JUDGE

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS

Jacob W. Biby, MARTIN, JEAN & JACKSON - TULSA, Tulsa, Oklahoma, for Plaintiff/Appellant
Michael W. Brewer, HILTGEN & BREWER, P.C., Oklahoma City, Oklahoma, for Defendant/Appellee

KEITH RAPP, PRESIDING JUDGE:

¶1 The plaintiff, Troy Hasenfratz (Father), individually and as parent and guardian of M.H., a minor, appeals an Order denying his motion for consideration after the trial court entered summary judgment in favor of the defendant, Ponca City Independent School District (District). This appeal proceeds under the accelerated procedure of Okla.Sup.Ct.R. 1.36, 12 O.S. Supp. 2014, ch. 15 app. 2.

BACKGROUND

¶2 M.H. attends Ponca City Senior High School (School). The School has a tradition of having non-cheerleaders perform a cheer at a pep rally before a football game. The cheer could include tumbling, but tumbling was not required. The activity was conducted on school grounds and had the approval of school officials.[1]

¶3 M.H. volunteered to participate in performing the cheer. He missed the initial practices due to illness and a snow day. He then came to a practice on February 17, 2013. M.H. and a friend attempted a two-man somersault. M.H. either landed on his neck or his friend rolled over him. M.H. suffered a broken neck resulting in hospitalization and surgeries.

¶4 Two school employees supervised the preparation for the pep rally. One was a teacher and the other a secretary. They had the additional roles as cheer leader coach or sponsor. Both had training and they were aware of the dangers associated with tumbling. They testified that they told the participating students about the hazards of tumbling and that they did not require or ask any student to do tumbling unless they had training. In response to questions, the coaches and the school principal agreed that the rally event was not a competition and medals were not awarded. The principal testified that it was not an "athletic event."

¶5 District maintained that it enjoyed immunity under the Governmental Tort Claims Act, 51 O.S. Supp. 2014, § 155(5) and (20). The trial court granted summary judgment to District, citing Section 155(5), and then denied Father's motion for reconsideration. Father appeals.

SCOPE OF APPEAL

¶6 The District's motion for summary judgment included a claim of immunity pursuant to 51 O.S. Supp. 2014, § 155(20). This provision reads:

The state or a political subdivision shall not be liable if a loss or claim results from:

. . . .

20. Participation in or practice for any interscholastic or other athletic contest sponsored or conducted by or on the property of the state or a political subdivision.

¶7 In its Order granting summary judgment, the trial court did not cite this immunity provision as the basis to grant summary judgment. Instead, the trial court applied the District's other position which is that District is immune under Section 155(5).[2]

¶8 Father's motion to reconsider did not raise Section 155(20). The parties did not argue Section 155(20) at the hearing on the motion to reconsider. However, Father's Petition-in-Error listed Section 155(20) as an error issue.

¶9 When a motion to reconsider, being the same as a motion for new trial, is filed, then, on appeal, the movant is confined to the issues raised in that motion. 12 O.S.2011, § 991(b). Notwithstanding the absence of Section 155(20) from the motion for reconsideration and arguments on the motion, the trial court's ruling denying the motion for reconsideration included:

3. The Plaintiff spends much time discussing the "coach/sponsors" and their training, but then wants to say that this is not an athletic event. The mere fact that medals are not awarded or score is not kept, does not define under the court's interpretation of the Curtis case finding of the Supreme Court (sic).[3]

WHEREFORE, the Defendant's motion for summary judgment is sustained and Plaintiff's motion for reconsideration is denied.

¶10 A reasonable view of the Record leads to the conclusion that the trial court added to or clarified its Order granting summary judgment when it ruled on the motion for reconsideration. The parties briefed the athletic contest exemption issue during the summary judgment phase of the proceedings, so they are not prejudiced. Father appealed the Order that denied reconsideration. Therefore, Father has not waived or failed to preserve the issue of immunity under Section 155(20).

STANDARD OF REVIEW

¶11 The standard of review when a trial court denies a motion for new trial after granting summary judgment is set out in Reeds v. Walker, 2006 OK 43, ¶ 9, 157 P.3d 100, 106-07 (footnotes omitted).

Summary relief issues stand before us for de novo review. All facts and inferences must be viewed in the light most favorable to the non-movant. Appellate tribunals bear the same affirmative duty as is borne by nisi prius courts to test for legal sufficiency all evidentiary material received in summary process in support of the relief sought by the movant. Only if the court should conclude there is no material fact (or inference) in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary relief in its favor. A trial court's denial of a motion for new trial is reviewed for abuse of discretion. Where, as here, our assessment of the trial court's exercise of discretion in denying defendants a new trial rests on the propriety of the underlying grant of summary judgment, the abuse-of-discretion question is settled by our de novo review of the summary adjudication's correctness. Judicial discretion is abused when a trial court errs with respect to a pure, unmixed question of law.

¶12 The summary judgment standard of review is stated in Murray County v. Homesales, Inc., 2014 OK 52, ¶ 4, 330 P.3d 519, 522-23.

The district court's order granting summary judgment is reviewed de novo. Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. That review requires examination of the pleadings and evidentiary materials submitted by the parties to determine whether there exists a genuine issue of material fact. Id. This Court bears "an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant." Copeland v. The Lodge Enters., Inc., 2000 OK 36, ¶ 8, 4 P.3d 695, 699.

¶13 One who defends against a claim and who does not bear the burden of proof is not required to negate the plaintiff's claims or theories in order to prevail on motion for summary judgment. When, as here, a defendant moves for summary judgment without relying upon an affirmative defense, the defendant must show that: 1) no substantial factual controversy exists as to at least one fact essential to plaintiff's theory of the cause of action; and, 2) the fact is in defendant's favor. Once a defendant has introduced evidentiary materials to establish these points, the plaintiff then has the burden of showing that evidence is available which justifies a trial of the issue. Akin v. Missouri Pacific Railroad Co., 1998 OK 102, ¶ 8, 977 P.2d 1040, 1044; Stephens v. Yamaha Motor Co., Ltd. Japan, 1981 OK 42, ¶ 11, 627 P.2d 439, 441; Runyon v. Reid, 1973 OK 25, ¶¶ 12-13, 510 P.2d 943, 946. On the other hand, when the defendant relies upon an affirmative defense then the defendant, as the party with the burden of proof, must meet the same standards as a plaintiff movant. Akin, 1998 OK 102, ¶ 9, 977 P.2d at 1044.

¶14 The applicability of an immunity provision under the Governmental Tort Claims Act (GTCA) presents an issue of law that is reviewed de novo. State ex rel. Oklahoma Dep't of Public Safety v. Gurich, 2010 OK 56, 238 P.3d 1. The appellate court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rulings. Neil Acquisition, L.L.C. v. Wingrod Investment Corp., 1996 OK 125, 932 P.2d 1100 n.1.

ANALYSIS AND REVIEW

A. Section 155(5) Immunity

¶15 Section 155(5) of Title 51 provides:

The state or a political subdivision shall not be liable if a loss or claim results from:
. . . .
5. Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees. (Emphasis added).

¶16 Father specifically disclaimed any contention that the District was primarily negligent due to its hiring, training, or supervising the coaches. Father argued that the active negligence was that of the coaches and the District's liability is vicarious under the theory of respondent-superior.[4]

¶17 However, before inquiry into whether respondent-superior is applicable, the Section 155(5) immunity issue must be resolved. Resolution of Section 155(5) immunity presents three threshold questions. The questions are:

First, whether District adopted a policy and were the coaches implementing that policy;
Second, whether the coaches, while performing (or failing to perform) their roles as supervisors of the cheering practice, engaged in acts or services which were in the discretion of the coaches as District employees;[5] and if not, Third, whether a fact question exists regarding whether the coaches were negligent in carrying out their duties in connection with the sanctioned pep rally.

1. Adoption of Policy

¶18 The trial court stated in its ruling denying the motion for reconsideration that the "policy" violated is missing. In fact, the Record does not contain any information showing that the District had adopted a policy with specific guides or instructions regarding the conduct of the pep rally practice and whether tumbling would be permitted. Thus, if Father's claim was that the coaches violated such a policy, the claim would have no support in the Record.

¶19 However, for purposes of summary judgment, it appears uncontested that District permitted the pep rally and the preceding practice conducted by the coaches.[6] Thus, the decision to permit the cheering activity and preceding practice supplied the policy element.[7] This Court concludes that the policy element is present for summary judgment purposes, even though, under the Record, the District's permission did not include further instructions or policies about how to implement the permitted activity.

¶20 This Court concludes that the District had adopted a policy to allow the pep rally and practice. The coaches, as school employees, implemented that policy. Therefore, the first question is answered in the affirmative.

2.Discretionary Acts

¶21 The discretion provision of Section 155(5) extends to employees.[8] The Supreme Court deems the discretionary function exemption from governmental tort liability to be extremely limited. Nguyen v. State, 1990 OK 21, ¶ 4, 788 P.2d 962, 964. The Court adopted the "operational approach" to determine whether an action is to be considered discretionary.

Under this approach, once a discretionary policy decision has been made, government employees have a duty to execute the policy on the operational level without negligence. Moreover, the general rule under the planning-operational test is that the discretion is exhausted by the initial adoption of policy, and that decisions to apply broad policy in specific cases are operational level decisions. Thus, under this approach the government retains its immunity with respect to formulation of policy, but is subject to liability for routine decisions and daily implementation of the policy or planning level decision.

Nguyen, 1990 OK 21, ¶ 5, 788 P.2d at 965.

¶22 The coaches and the principal testified about the primary responsibility of safety for the students. They acknowledged that there were hazards associated with tumbling. The coaches said that they told the students not to engage in an activity for which the students had not been trained, including tumbling. However, the coaches did not require that students do anything and, at the pep rally, they could simply walk across the mat and wave.

¶23 The coaches relied on the students to tell them about their level of training. The coaches did not have knowledge of M.H.'s tumbling training, or lack of such training. M.H. was absent from the initial practice sessions. The Record does not reflect whether the coaches specifically asked him about his training or informed him about not participating in tumbling without training. M.H. testified that he did the somersault because of peer pressure.

¶24 One of the coaches saw M.H. and his friend begin the two-person somersault that led to the injury. According to the Record, she did not try to prevent M.H. from doing the somersault, but it is also not clear that she had time to do so before he commenced the somersault and was injured.

¶25 Thus, the Record is susceptible of two conclusions. The authority to conduct the pep rally and practices apparently omitted any guidelines, instructions, or limitations. As a result, one conclusion is that the District vested the coaches with discretion concerning the implementation of the authorization to hold the pep rally. If so, Section 155(5) affords immunity.

¶26 Conversely, it is possible from the Record to conclude that the coaches' actions constituted routine decisions and daily implementation of the District's policy decision permitting the pep rally. In that case, Section 155(5) does not afford immunity.

¶27 The second question cannot be answered based on the Record. In order to grant summary judgment, the moving party must be entitled to judgment as a matter of law. 12 O.S.2011, § 2056(C); Rule 13(e) Rules For District Courts, 12 O.S. Supp. 2014, ch. 2 app. The applicability of an immunity provision under the GTCA presents an issue of law and is an issue for initial ruling by the trial court.

¶28 Moreover, resolution of the "discretion" question necessarily precedes inquiry into whether the coaches were negligent in the implementation of the decision approving the pep rally and whether their negligence, if any, was the cause of the injury suffered by M.H. Thus, the trial court erred in granting summary judgment under the Record presented and premised upon Section 155(5) immunity.[9]

 

B.Section 155(20) Immunity

 

¶29 The issue here is whether the pep rally is an "athletic contest." All other elements of Section 155(20) are present. M.H. participated in a practice and the pep rally practice was conducted on the property of the District.

¶30 In ruling that an interscholastic softball game was an athletic contest, the Oklahoma Supreme Court has defined the words "athletic" and "contest" as follows:

The word "athletic" is defined as "[o]f, pertaining to, or befitting athletics or athletes." The American Heritage Dictionary, [2nd College ed. 1985] supra. at 138. "Athletics" is defined as "[a]thletic activities, as competitive sports" or "[t]he principles or system of athletic exercises and training," while the word "athlete" is primarily defined as "[o]ne who takes part in competitive sports." Id. The word "contest" is defined as "[a] struggle for superiority or victory between rivals" or "[a] competition." Id. at 316.

Curtis v. Board of Educ. of Sayre Pub. Sch., 1995 OK 119, ¶ 12, 914 P.2d 656, 659.

¶31 Thus, participation in a wrestling match as a part of a physical education class constituted participation in an athletic contest. Evans By and Through Evans v. Oaks Mission Pub. Sch., 1997 OK 97, 945 P.2d 492. On the other hand, participation in a weightlifting class "that fulfills the physical education requirement, wherein each student attempts to lift more than he/she lifted earlier in the school year but not in competition with one another" is not participation in an athletic contest. Hutts v. Western Heights Indep. Sch. Dist. No. 1-41 of Oklahoma County, 2011 OK CIV APP 52, 255 P.3d 449.

¶32 The injury here occurred during a practice for an authorized pep rally. The pep rally was not an enrolled "class." The students did not compete against each other or against any outside persons. There were no medals or awards for participation. No student was required to engage in tumbling nor were they instructed in the hazards thereof and the students were also free to just walk and wave. The school principal agreed that the pep rally was not an athletic event.

¶33 The criterion of "an athletic or sports competition where participants strive for superiority or victory" is missing here. This pep rally and the practice were not a competitive sport or a contest or a practice for an athletic contest. Therefore, the trial court erred in ruling that District was immune under Section 155(20) and granting summary judgment on that premise.

CONCLUSION AND SUMMARY

¶34 M.H. sustained an injury during a pep rally practice involving student participants. The injury occurred on District's property. The trial court granted District's motion for summary judgment and then denied reconsideration. The grounds for the trial court's rulings are based upon application of the immunity provisions of Section 155(5) and (20) of the Governmental Tort Claims Act.

¶35 Here, District's employees were supervising the practice preceding an authorized pep rally. The Record does not contain sufficient information for determination of whether the employees' actions were discretionary as opposed to being engaged in routine decisions and implementation of the authorization to conduct a pep rally and practice before the pep rally. Therefore, summary judgment on the Record presented was error.

¶36 The pep rally and the practice are not athletic contests. The students were not engaged in any competitive activity. The pep rally and practice did not involve a quest for victory over other participants or rivals. Therefore, the trial court erred in granting summary judgment on the ground of immunity under Section 155(20).

¶37 The trial court erred by granting summary judgment. Therefore, the trial court erred by denying the motion for reconsideration.

¶38 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS. 

BARNES, J., and THORNBRUGH, J., concur.

FOOTNOTES

[1] The pep rally had to be and was approved by school administration. Turney Deposition, Record, Tab 6, Ex. 4, pp. 21-22.

[2] Section 155(5) provides for immunity for:

5. Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees.

[3] Curtis v. Board of Educ. of Sayre Pub. Sch., 1995 OK 119, 914 P.2d 656 (granting immunity to resolve the first impression issue of whether § 155 (20) provides governmental immunity for school-sponsored athletic contests which are not interscholastic athletic contests).

[4] Father's motion for reconsideration. Record, Tab 9. Father cites to cases such as Randell v. Tulsa Indep. Sch. Dist. No. 1, 1994 OK CIV APP 156, 889 P.2d 1264. The Randell Court implicitly recognized that an employee's negligence, with vicarious liability, is different than active negligence on the part of the School there. However, the Court found that the employee was not in fact negligent, so it is not a foregone conclusion that the Court would apply the respondent-superior doctrine had it determined that the employee was negligent.

[5] There is no contention that the coaches acted outside the scope of their employment or in bad faith.

[6] One of the coaches testified that any pep rally had to have permission. This pep rally and the manner it was to be performed were approved by the school. Turney Deposition, Record, Tab 6, Ex. 4, pp. 21-22. The principal testified that since the incident the school no longer allows the pep rally. Dilbeck Deposition, Record, Tab 6, Ex. 6, p. 33. All inferences and conclusions to be drawn from the materials must be viewed in a light most favorable to the non-moving party. Carmichael, 1996 OK 48, ¶ 2, 914 P.2d at 1053.

[7] A policy is defined as the "general principles by which a government is guided in its management of public affairs." Black's Law Dictionary 1178 (7th ed. 1999). For purposes of summary judgment, the Record in this case shows that District required approval of pep rallies and approval had been granted for this pep rally and practice.

[8] In his summary judgment and motion to reconsider arguments, Father does not challenge the authorization of the pep rally or the authorization to allow students to participate in the rally. Also, Father does not maintain that the District was negligent in selecting the qualifications and number of supervising coaches, or in the selection of the specific persons who supervised the practices. It is noted that Father's petition is not as limiting, given the broad allegation that the school district was negligent. See petition, ¶ 22.

Thus, the statement in Jackson v. Oklahoma City Pub. Sch., 2014 OK CIV APP 61, ¶ 9, 333 P.3d 975, 979, about immunity for discretionary acts does not apply. The Court said, "It is also settled that a school's hiring, training, and supervising decisions are discretionary and therefore a school may not be liable for damages resulting from those decisions." Moreover, the facts in Jackson involved a claim of an intentional tort by a teacher by using excessive force. That claim presented an additional reason for finding immunity.

"Therefore 'the government retains its immunity with respect to formulation of policy, but is subject to liability for routine decisions and daily implementation of the policy or planning level decisions.'" State ex rel. Oklahoma Dep't of Pub. Safety, 2010 OK 56, ¶ 10, 238 P.3d at 3 (quoting Nguyen, 1990 OK 21, ¶ 5, 788 P.2d at 965).

[9] This Court's Opinion does not address whether respondent-superior applies to a governmental entity because that issue depends here on whether District has immunity.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1994 OK CIV APP 156, 889 P.2d 1264, 66 OBJ 625, Randell v. Tulsa Independent School Dist. No. 1
Discussed
 2011 OK CIV APP 52, 255 P.3d 449, HUTTS v. WESTERN HEIGHTS INDEPENDENT SCHOOL DISTRICT NO. 1-41
Discussed
 2014 OK CIV APP 61, 333 P.3d 975, JACKSON v. OKLAHOMA CITY PUBLIC SCHOOLS
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1990 OK 21, 788 P.2d 962, 61 OBJ 674, Nguyen v. State
Discussed at Length
 1997 OK 97, 945 P.2d 492, 68 OBJ 2469, EVANS v. OAKS MISSION PUBLIC SCHOOL
Discussed
 1995 OK 119, 914 P.2d 656, 66 OBJ 3478, Curtis v. Board of Educ. of Sayre Public Schools
Discussed at Length
 1973 OK 25, 510 P.2d 943, RUNYON v. REID
Discussed
 2006 OK 43, 157 P.3d 100, REEDS v. WALKER
Discussed
 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed at Length
 1996 OK 125, 932 P.2d 1100, 67 OBJ 3566, Neil Acquisition, L.L.C. v. Wingrod Investment Corp.
Discussed
 2010 OK 56, 238 P.3d 1, STATE ex rel. OKLAHOMA DEPT. OF PUBLIC SAFETY v. GURICH
Discussed at Length
 2014 OK 52, 330 P.3d 519, MURRAY COUNTY v. HOMESALES, INC.
Discussed
 2000 OK 36, 4 P.3d 695, 71 OBJ 1172, Copeland v. The Lodge Enterprises, Inc.
Discussed
 1981 OK 42, 627 P.2d 439, Stephens v. Yamaha Motor Co., Ltd.
Discussed
 1998 OK 102, 977 P.2d 1040, 69 OBJ 3512, Akin v. Missouri Pacific Railroad Co.
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2056, Motion for Summary Judgment
Cited
 12 O.S. 991, Right to Perfect Appeal to Supreme Court without Filing Motion for New Trial - Exemption
Cited
Title 51. Officers
 Cite
Name
Level

 51 O.S. 155, Exemptions From Liability
Discussed