OPINION BY P. THOMAS THORNBRUGH, CHIEF JUDGE:
¶ 1 Sandra Hold appeals a decision of the district court finding that a power of attorney given by Gorman Hold to his son-in-law, Stephen Carlile, was not effective at the time Carlile transferred property on Gorman Hold's behalf. On review, we affirm the decision of the district court, but on a different rationale from that stated.
BACKGROUND
¶ 2 Gorman Hold and Sandra Hold were married but allegedly separated at the time of the events in this case. In June 2014, Gorman Hold purchased a property located in Tulsa at 8618 South 69th East Ave (the "8618 property"). The deed was titled in joint tenancy with one Kyla Bentley. After suffering, on July 10, 2015, what is described as a "brain bleed," Gorman Hold, on July 13, 2015, executed a durable power of attorney to his son-in-law, Stephen Carlile, pursuant to 58 O.S.2011 §§ 1071 through 1077. Four days later, Gorman executed a durable power of attorney to his son, Gary Hold, stating that it revoked the previous power of attorney. Carlile was informed of the revocation, but allegedly disputed its validity, because the second power of attorney identified only one witness on the signature page.
¶ 3 On October 9, 2015, Carlile, under the purported authority of the first power of attorney, filed a deed transferring Gorman *428 Hold's interest in the 8618 property to himself, with the stated intention of severing the joint tenancy with Kyla Bentley and destroying the right of survivorship. Gorman Hold died five days later, on October 14, 2015. On August 31, 2016, Sandra Hold filed a petition for "quiet title and ejectment" against Bentley, alleging that Carlile's October 9, 2015 deed had severed the joint tenancy and that Kyla Bentley's claim of a right of survivorship created a cloud on the title of the 8618 property.[1]
¶ 4 Bentley filed an appearance but did not answer, and Sandra Hold moved for default judgment which the trial court denied. Gary Hold then filed a motion to be added as a defendant and third-party plaintiff, stating that he had obtained the rights of Kyla Bentley via a quitclaim deed, and that he was the real party in interest. The trial court allowed Hold to be added as a party. The matter then proceeded as a suit between Sandra Hold and Gary Hold. Both parties filed motions for summary judgment on the issue of the validity of Carlile's power of attorney. The district court ruled in Gary Hold's favor, holding that Gorman Hold was not competent at the time he executed either power of attorney. Sandra filed a motion to reconsider, which was denied. Sandra's motion, filed within ten days of the court's August 25, 2017, order of summary judgment, is the functional equivalent of a motion for new trial filed within ten days, as provided by 12 O.S.2011 § 651.
¶ 5 As a postscript, in September 2017, after the court had ruled that Carlile's quitclaim deed to himself was void due to Gorman's lack of competence, and Sandra Hold filed her motion to reconsider, Kyla Bentley finally re-appeared in the case and filed a "motion to vacate" alleging that she had been given no consideration for her quitclaim deed to Gary Hold, and that the deed was obtained by fraud. Bentley argued she was the true owner of the property. The court denied her motion to vacate, and there is no record of an appeal by Kyla Bentley from the latter decision.
STANDARD OF REVIEW
¶ 6 Our standard of review when a trial court denies a motion for new trial after granting summary judgment is set out in Reeds v. Walker , 2006 OK 43, ¶ 9, 157 P.3d 100 (footnotes omitted):
Summary relief issues stand before us for de novo review. All facts and inferences must be viewed in the light most favorable to the non-movant. Appellate tribunals bear the same affirmative duty as is borne by nisi prius courts to test for legal sufficiency all evidentiary material received in summary process in support of the relief sought by the movant. Only if the court should conclude there is no material fact (or inference) in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary relief in its favor. A trial court's denial of a motion for new trial is reviewed for abuse of discretion.
See also Andrew v. Depani-Sparkes , 2017 OK 42, ¶ 27, 396 P.3d 210 (quoting Reeds ).
ANALYSIS
I. STATUTORY POWERS OF ATTORNEY
¶ 7 The district court held that Gorman Hold was not competent at the time of making either power of attorney. We agree with Sandra Hold that there is no record evidence of incompetence until September 28, 2015, more than two months after the subject powers of attorney were made. This does not end the matter, however, as the outcome ordered by the district court is correct as a matter of law.
¶ 8 This case presents primarily a question of statutory interpretation. Title 58 O.S.2011 § 1072.2 provides a standard form for a durable power of attorney. The statute states, "The principal, or such other person, shall sign in the presence of two witnesses, each of whom shall sign his name in the presence of the principal and each other." § 1072.2(A)(1) (emphasis added). It is this *429 provision on which Sandra Hold relies, arguing that the second power of attorney made by Gorman Hold to Gary Hold was invalid because it shows only one witness.
¶ 9 If § 1072.2 stated exclusive and mandatory requirements for a valid power of attorney, Sandra would be correct. Section 1072.2 contains, however, two curious caveats. The first is found in subsection A, and states that "failure to execute a power of attorney as prescribed in this section shall not be construed to diminish the effect or validity of an otherwise properly executed durable power of attorney." The second is found in subsection F, and states, "Nothing in this section shall be construed to affect powers of attorney established pursuant to common law."
¶ 10 The exact result of the first caveat is not immediately clear. The statutory language implies that there is another way to construct ("otherwise properly execute") a durable power of attorney, but it gives no further guidance. Oklahoma does have a second set of statutes dealing with powers of attorney, at 15 O.S.2011 §§ 1001 through 1020. Those provisions set out a slightly different statutory form at 15 O.S.2011 § 1003, which does not state a requirement of two witnesses.
¶ 11 Interpretation would be relatively simple if the Title 58 statute governed durable powers of attorney and the Title 15 statute governed non-durable powers. That is not the case, however. Title 15 O.S.2011 § 1004 states:
A power of attorney legally sufficient under this act is durable to the extent that durable powers are permitted by other laws of this state and the power of attorney contains language, such as "This power of attorney will continue to be effective if I become disabled, incapacitated, or incompetent", showing the intent of the principal that the power granted may be exercised notwithstanding later disability, incapacity, or incompetency.
It appears that Oklahoma has two statutory sections allowing the valid construction of a durable power of attorney, and only one section states a requirement of two witnesses.
¶ 12 Beginning with the rule of interpretation that the Legislature is not presumed to perform a vain or useless act,[2] we must presume some substantive difference, besides the number of witnesses, between a durable power of attorney executed pursuant to 15 O.S. §§ 1001 through 1020 and one executed pursuant to 58 O.S. §§ 1071 through 1077. The difference appears to be a subtle one. Execution pursuant to § 1072.2 creates a presumption of competence and a presumption of justified reliance if a durable power is executed pursuant to its provisions:
B. Execution of a durable power of attorney in substantially the form prescribed by this section shall create a presumption that the principal understands the nature and purpose of the power of attorney and has executed the same while being of sound mind, and of his free will. A person dealing with the attorney-in-fact shall not be required to inquire into the validity or adequacy of the execution of the power of attorney, nor shall any such person be required to inquire into the validity or propriety of any act of an attorney-in-fact apparently authorized by a power of attorney executed pursuant to this section.
¶ 13 This language is absent from 15 O.S. §§ 1001 through 1020. This difference becomes material if competency becomes an issue, or if third-party reliance becomes an issue. We find it clear, however, that a durable power of attorney may be executed in Oklahoma pursuant to the provisions of either 15 O.S. §§ 1001 through 1020 or 58 O.S. §§ 1071 through 1077. As such, we find the second power of attorney granted to Gary Hold is valid.
II. COMMON LAW POWERS OF ATTORNEY
¶ 14 Title 58 O.S.2011 § 1072.2 (F) also states that "nothing in this section shall be construed to affect powers of attorney established pursuant to common law." This implies three methods of creating a valid power of attorney: 15 O.S. §§ 1001 through 1020 ; 58 O.S. §§ 1071 through 1077, and previous common law. The statutory forms appear to have evolved, in part, because of the difficulty in making a common-law power durable . In *430 Cox v. Freeman , 1951 OK 16, ¶ 37, 227 P.2d 670 (quoting Filtsch v. Bishop , 1926 OK 603, 247 P. 1110 ), the Court noted, "A power of attorney which, in effect, is a mere contract of agency is revocable at the will of the principal." Because this power exists by the continuing approval of the principal, it would fail at common law if the principal became incompetent. The statutory durable power of attorney abrogates the common-law rule that the mental incapacity of the principal terminates the authority of the agent. See 58 O.S.2011 § 1073.
¶ 15 Even assuming (without agreeing) that the power of attorney given to Gary Hold was not validly executed pursuant to either statute, it was still effective as a common law power, at least until Gorman Hold became incompetent. Therefore, the power of attorney given to Stephen Carlile on July 13, 2015, was properly revoked on July 17.[3] Gary Hold testified that Carlile was informed of the revocation before Carlile transferred the subject property. Sandra Hold did not deny this notice.[4] Hence, any transfer made by Carlile on October 9, 2015, more than two months after his power of attorney was revoked, is void.
CONCLUSION
¶ 16 The power of attorney given to Gary Hold on July 17, 2015, was valid pursuant to Oklahoma law and properly revoked the power of attorney given to Stephen Carlile four days earlier. Hence, Carlile's transfer of the 8618 property to himself on October 9, 2015, had no legal effect. The decision of the district court is affirmed.
¶ 17 AFFIRMED .
FISCHER, J., concurs, and WISEMAN, P.J., concurs in result.

Curiously, the petition, while arguing that Carlile's October 9, 2015 deed to himself was valid, does not state that there was any subsequent transfer between Carlile and Gorman Hold's estate. If Carlile was still a co-tenant with Bentley, the estate would appear to have no interest in the property.

See Curtis v. Bd. of Educ. of Sayre Pub. Sch. , 1995 OK 119, ¶ 9, 914 P.2d 656.

Sandra Hold's arguments imply that a "hierarchy of revocation" exists between powers of attorney granted pursuant to 15 O.S. §§ 1001 through 1020, 58 O.S. §§ 1071 through 1077, and common law, i.e., that powers executed pursuant to 58 O.S. §§ 1071 through 1077 cannot be revoked unless the new power of attorney uses the same statutory form. We find no authority for this theory.

Sandra Hold stated in summary judgment briefing that she denied that Carlile was informed that the power of attorney had been revoked. However, she did so on the basis that the revocation was legally invalid, not that Carlile was unaware of it.